# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 5, 2012 Session

## IN RE: TAYLOR B. W. ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for McMinn County**
**No. 2009CV7240      Jerri Saunders Bryant, Chancellor**

---

**No. E2011-00352-SC-R11-PT - Filed February 21, 2013**

---

Mother and Father entered into a marital dissolution agreement and a parenting plan for their two minor children. Mother subsequently injected Father with a chemical used to euthanize animals. She pleaded guilty to the attempted second degree murder of Father and was sentenced to twelve years incarceration. Mother and Father entered into an amended parenting plan that provided for the children's visitation with their maternal grandmother and with Mother in prison. The amended parenting plan also provided for the resumption of the original parenting plan after Mother's release from prison. Father remarried while Mother was incarcerated. Father and Stepmother filed a petition for termination of Mother's parental rights and a petition for adoption by Stepmother. The trial court found that there was a statutory ground for termination of Mother's parental rights and that termination of Mother's parental rights was in the best interests of the children. The trial court subsequently amended its order, concluding that termination of Mother's parental rights was not in the best interests of the children and denying the petition for termination of Mother's parental rights. Father and Stepmother appealed, and the Court of Appeals reinstated the original order. We conclude that Father and Stepmother failed to prove by clear and convincing evidence that termination of Mother's parental rights is in the best interests of the children. Accordingly, we reverse the Court of Appeals and reinstate the amended order of the trial court.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Trial Court Affirmed

JANICE M. HOLDER, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

John Kimball, Cleveland, Tennessee, for the minor children, Taylor W. and Ashley W.

Phillip McCarroll Jacobs and James F. Logan, Jr., Cleveland, Tennessee, for the appellant-intervenor, Brenda T., and for the appellant, Katina H.

Allison James Starnes-Anglia and Shelley S. Breeding, Knoxville, Tennessee, for the appellees, Loy W. and Robert W.

**OPINION**

I. Facts and Procedural History

Katina H. ("Mother") and Robert W. ("Father") were divorced by a final decree in the Circuit Court for Bradley County on March 20, 2002. At that time, Mother and Father entered into a marital dissolution agreement and a parenting plan for their two minor children, Taylor W. and Ashley W. ("the children").

On November 13, 2002, Mother purported to give Father a flu vaccination but instead injected him with a chemical used to euthanize animals. On May 5, 2003, Mother pleaded guilty to the attempted second degree murder of Father and received a sentence of twelve years to be served at thirty percent. The children were seven and five years old at the time Mother was sentenced.

On September 15, 2004, the Circuit Court for Bradley County entered an agreed order amending the parties' parenting plan. The amended parenting plan provided visitation with the children's maternal grandmother ("Grandmother") one weekend per month to allow the children to visit their mother in prison. The amended parenting plan also provided Grandmother with an additional overnight visit each month with the children. Grandmother was permitted to telephone the children at least once per week and to have lunch at school with the children three times per month. Mother was permitted to telephone the children while they were at the babysitter's home or that of the paternal grandmother.

The amended parenting plan provided for a return to the original parenting plan[1] following Mother's release from prison, "with supervision by Grandmother" for at least six months. If the parties were unable to agree on unsupervised co-parenting time after six months, they would return to mediation on the issue.

While Mother was incarcerated, Father developed a relationship with Loy W. ("Stepmother"). Stepmother moved from Texas to Tennessee to be with Father in 2008, after which the children no longer visited Mother in prison. Father and Stepmother were married

---

[1] The original parenting plan is not included in the record on appeal.

on February 14, 2009.  On October 9, 2009, Father and Stepmother filed this action in the Chancery Court for McMinn County to terminate Mother's parental rights[2] and to obtain a stepparent adoption.[3]

Grandmother filed an action in the Circuit Court for Bradley County to enforce her visitation rights, and the trial court consolidated the cases.  Pursuant to Tennessee Code Annotated section 36-1-116(f)(2) (2010), the trial court suspended all proceedings seeking to enforce visitation rights pending the trial court's order in the adoption proceeding.

A trial was held on November 29, 2010, approximately one month after Mother was released from prison.  At trial, Mother argued that the issues of visitation and the best interests of the children had been previously addressed in the amendment of the parenting plan by the agreed order of September 15, 2004.  Mother therefore contended that Father and Stepmother were precluded from relitigating these issues.

After hearing the evidence, the trial court concluded that Father and Stepmother had the burden of proving a statutory ground for parental termination by clear and convincing evidence.  The trial court concluded that Father and Stepmother met their burden by establishing that Mother had been sentenced to a period of incarceration of twelve years when the children were under eight years of age.  See Tenn. Code Ann. § 36-1-113(g)(6) (2010).

The trial court next considered the best interests of the children.  See Tenn. Code Ann. § 36-1-113(i) (2010).[4]  In support of the first of its two orders reflecting its best interest

_____

[2] At the time Father and Stepmother filed this action, the statute governing parties who can petition for termination of parental rights did not include a biological parent as a petitioner.  Tenn. Code Ann. § 36-1-113(b) (2010); see Osborn v. Marr, 127 S.W.3d 737, 739-40 (Tenn. 2004).  After the petition in this case was filed, the General Assembly amended Tennessee Code Annotated section 36-1-113(b) to permit a parent to file a petition to terminate the other parent's parental rights when the other parent has been convicted of severe child sexual abuse.  Act of May 21, 2012, ch. 1042, secs. 1-2, § 36-1-113(b), 2012 Tenn. Code Ann. Adv. Legis. Serv. 338 (LexisNexis) (relative to child sexual abuse offenders).  Although Father had no standing to bring a petition to terminate parental rights, he is a necessary party to a petition for adoption by Stepmother.  See Tenn. Code Ann. § 36-1-115(c) (2010) ("[I]f the spouse of the petitioner is a legal or biological parent of the child to be adopted, such spouse shall sign the petition as co-petitioner.").

[3] Termination of Mother's parental rights is a prerequisite to Stepmother's adoption of the children. See Tenn. Code Ann. § 36-1-120(a)(6)(C) (2010).

[4] Tennessee Code Annotated section 36-1-113(i) provides:

(continued...)

analysis, the trial court considered each factor listed in Tennessee Code Annotated section 36-1-113(i).

The trial court determined that the end of Mother's incarceration was an adjustment of circumstances and that obtaining a job was an adjustment of conduct. See Tenn. Code Ann. § 36-1-113(i)(1). In addition, passing examinations and undergoing training[5] was an adjustment of circumstances, conduct, and conditions that made it safe for the children to be

[4] (...continued)
In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

[5] The nature of the training and examinations in which Mother was engaging is not reflected in the record.

in Mother's home. The trial court found no proof that Mother posed a danger to the children and that she had done nothing but attempt to have a relationship with the children.

The trial court found that factor (2), whether the parent or guardian failed to effect a lasting adjustment after reasonable efforts by available social services agencies, was not applicable to the circumstances of this case because Mother had been released from prison for a limited period of time and no social services had been provided. See Tenn. Code Ann. § 36-1-113(i)(2).

The trial court found that Mother attempted to have regular visitation or contact with the children to the extent that it was within her power to do so. See Tenn. Code Ann. § 36-1-113(i)(3). The trial court further found that Mother enjoyed a relationship with the children until Stepmother became involved although the younger daughter testified that she had few memories of Mother. See Tenn. Code Ann. § 36-1-113(i)(4).

The trial court determined that changing the children's physical environment would upset them but the proof was inconclusive as to whether changing caretakers and the physical environment would have an effect on the children's medical condition. See Tenn. Code Ann. § 36-1-113(i)(5). The trial court emphasized that no psychological proof was provided to show whether the effect on the children would be temporary or prolonged. Although the trial court reflected that the children had voiced a desire to terminate Mother's parental rights, the trial court believed the desire was a result of their loyalties to Father and Stepmother.

The trial court found no brutality to the children but that Mother did not take into consideration her actions against Father and how those actions would affect the children. See Tenn. Code Ann. § 36-1-113(i)(6). The physical environment of Mother's home was not proven to be unhealthy or unsafe, and no criminal activity was shown to be present in Mother's home. See Tenn. Code Ann. § 36-1-113(i)(7). Other than the personal opinions of Father and Stepmother, no evidence of Mother's mental or emotional status was presented. See Tenn. Code Ann. § 36-1-113(i)(8). The trial court found that no child support was ordered and that none was paid. See Tenn. Code Ann. § 36-1-113(i)(9).

With respect to the 2004 mediated agreement, the trial court observed that Mother's criminal background was known to Father at the time of the agreement. As a result, the issues "that were relied on in the mediation agreement are the same ones that are being relied on today, with the exception" of Stepmother's involvement.

> [Father] testified he [entered into the mediated agreement] in one point in the children's best interest, and even this mediated agreement went one step further than a simple change of custody petition or a change of coparenting

petition in that it made a plan for an eventual release of [Mother]. It is not surprising that contact with [Mother] would be stopped when another relationship with another woman began. That one wasn't anticipated in the mediated agreement. But the parties did go all the way and mediate what they would do when [Mother] got out of jail.

The trial court acknowledged Father's testimony that his motivation in seeking the termination of Mother's parental rights was the children's desire for him to do so. The trial court suggested, however, that the children's alleged fear of Mother was "suspect" because "Father and the two children all use the same words, almost as if that were a rehearsed statement." The trial court observed that Father and the minor children could have benefitted from more professional counseling.

Although the trial court considered the 2004 mediated agreement in determining the best interests of the children, it concluded that the defense of res judicata did not apply because the parties in the two cases were different. Stepmother was a party to the parental termination and stepparent adoption case, but Stepmother was not a party to the divorce action between Mother and Father. The trial court therefore concluded that the 2004 agreement did not preclude the subsequent petition for termination of parental rights.

After weighing its findings as to the factors in Tennessee Code Annotated section 36-1-113, the trial court concluded that termination of Mother's parental rights was in the best interests of the children and entered an order terminating Mother's parental rights.

Mother filed a motion to alter or amend the trial court's order, arguing that the trial court had improperly allocated the burden of proof to her as to factors (4), (5), and (6) of Tennessee Code Annotated section 36-1-113(i). The trial court agreed that it had improperly allocated the burden of proof to Mother as to these factors and reexamined its findings as to factors (4), (5), and (6).

In contrast to its original order, the trial court found that Mother had a meaningful relationship with her children prior to Stepmother becoming involved with Father. See Tenn. Code Ann. § 36-1-113(i)(4). As to Tennessee Code Annotated section 36-1-113(i)(5), the trial court found that Mother did not request a change in the children's caretakers or a change in the physical environment of the children, and Father provided no expert proof of emotional or psychological harm that would occur if the children were to spend time with Mother. No proof was presented that time spent with Mother would have any effect on the children's medical condition.

-6-

As to factor (6), the trial court reiterated that Mother did not consider the psychological consequences that her attempted second degree murder of Father would have on their children. Mother had, however, made every effort to be a part of her children's lives, both during her incarceration and after her release from prison. The court stated that the "facts of this case post-incarceration make this case very different from most petitions to terminate parental rights."

Although the trial court altered its findings with respect to factors (4),(5), and (6), it did not disturb its previous findings as to factors (1), (2), (3), (7), (8), and (9). In addition, the court did not alter its conclusion that the termination of parental rights could be pursued, notwithstanding the 2004 agreed order.

The trial court determined that "[b]ecause the case is so close," Father and Stepmother failed to prove by clear and convincing evidence that it was in the best interests of the children to terminate Mother's parental rights. The court therefore entered an amended order denying Father and Stepmother's petition to terminate parental rights.

Father and Stepmother appealed, asserting that the trial court erred in determining they had not shown by clear and convincing evidence that it was in the best interests of the children to terminate Mother's parental rights. The Court of Appeals agreed and found "it is clear the [t]rial [c]ourt's first ruling that termination was in the best interest[s] of the children was supported by clear and convincing evidence." In re Taylor BW, No. E2011-00352-COA-R3-PT, 2011 WL 5135256, at *5 (Tenn. Ct. App. Oct. 28, 2011). The Court of Appeals reinstated the trial court's first order. In re Taylor BW, 2011 WL 5135256, at *9. We granted Mother permission to appeal.

## II. Analysis

There is no dispute that Father and Stepmother have established by clear and convincing evidence that Mother was sentenced to ten or more years incarceration at a time when the children were under eight years of age. See Tenn. Code Ann. § 36-1-113(g)(6). Because Father and Stepmother have established a ground for termination of Mother's parental rights, the only issue in this case is whether Father and Stepmother have proven by clear and convincing evidence that termination of Mother's parental rights is in the best interests of the children. See Tenn. Code Ann. § 36-1-113(c).

Res Judicata and Collateral Estoppel

We begin with Mother's assertion that the agreed order amending the parenting plan entered in the Circuit Court for Bradley County on September 15, 2004, should estop Father and Stepmother from now asserting that it is in the best interests of the children to terminate Mother's parental rights. Mother has asserted at different times in the proceedings that the doctrines of res judicata or collateral estoppel apply.[6] The trial court held that because Stepmother was not a party to Mother and Father's divorce proceedings, res judicata did not apply.

A trial court's determination of the applicability of res judicata or collateral estoppel is a question of law, which we review de novo with no presumption of correctness. See Brown v. Shappley, 290 S.W.3d 197, 200 (Tenn. Ct. App. 2008).

The doctrine of res judicata prevents a suit between the same parties or their privies on the same cause of action with respect to issues that could have been litigated in a prior suit. Creech v. Addington, 281 S.W.3d 363, 376 (Tenn. 2009). The cause of action in this suit involves the termination of Mother's parental rights. The prior litigation between Mother and Father involved their divorce, a parenting plan for the children, and grandparent visitation. The causes of action in the two cases are different, and therefore res judicata does not prevent consideration of the parental termination action.

As we stated in Clark v. Sputniks, LLC, collateral estoppel is an extension of the principle of res judicata and only applies in a suit in which the issue involved has already been litigated in a prior suit by the same parties. 368 S.W.3d 431, 437 (Tenn. 2012) (quoting Home Ins. Co. v. Leinart, 698 S.W.2d 335, 336 (Tenn. 1985)). The factors for determination of the best interest of a child depend on the type of action before the court. See In re Audrey S., 182 S.W.3d 838, 878 n.52 (Tenn. Ct. App. 2005). The best-interest determination in a parental termination action is governed by the nine non-exclusive factors in Tennessee Code Annotated section 36-1-113(i). A modification of a parenting plan and grant of grandparent visitation, however, are governed by the sets of factors in Tennessee Code Annotated sections 36-6-106(a) (2010) (child custody) and 36-6-307 (2010) (grandparent visitation).

---

[6] The trial court's amended order considered the doctrine of collateral estoppel but appeared to determine that the doctrine did not apply. In addition, Mother has raised the defense of judicial estoppel for the first time on appeal. We consider the defense of judicial estoppel to have been waived. See Tenn. R. App. P. 36(a).

The determination of the best interests of Taylor W. and Ashley W. in the present parental termination proceeding requires consideration of a different set of factors than those that were considered in the prior custody and grandparent visitation proceeding. Each determination therefore requires the issue of "best interest" to be decided using a different set of factors. The doctrine of collateral estoppel is therefore inapplicable because the issues are not identical. Mullins v. State, 294 S.W.3d 529, 536 (Tenn. 2009) (citing Patton v. Estate of Upchurch, 242 S.W.3d 781, 787 (Tenn. Ct. App. 2007)).

## Best Interests Of The Children

Father and Stepmother argued in the Court of Appeals that the trial court erred in granting the motion to alter or amend and in finding that Mother's parental rights should not be terminated. The Court of Appeals reviewed the record and found, in contrast to the amended order, that the children "arguably never had a meaningful relationship" with Mother. In re Taylor BW, 2011 WL 5135256, at *8. Accordingly, the Court of Appeals reinstated the trial court's original order holding that the trial court's first judgment was supported by clear and convincing evidence. In re Taylor BW, 2011 WL 5135256, at *5, *9. The Court of Appeals erred in its analysis.

In this case, the trial court reconsidered the evidence presented as well as the applicable law and granted Mother's motion to amend. The trial court found that it had improperly assigned the burden of proof to Mother as to several factors. In its amended ruling, the trial court clearly articulated the reasons for its conclusions. A trial court may amend its judgment at any time before the judgment becomes final. Waste Mgmt. v. S. Cent. Bell Tel. Co., 15 S.W.3d 425, 429 (Tenn. Ct. App. 1997). The findings of fact and conclusions of law in the amended order are subject to review by this Court.

This Court has previously applied different standards of review in parental termination cases. See, e.g., In re Bernard T., 319 S.W.3d 586, 596-97 (Tenn. 2010) (reviewing the trial court's findings of fact de novo with a presumption of correctness, followed by a determination of whether the facts provide clear and convincing evidence that supports the parental termination claim); In re F.R.R., 193 S.W.3d 528, 530 (Tenn. 2006) ("[W]hether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence."); Jones v. Garrett, 92 S.W.3d 835, 838 (Tenn. 2002) (applying the "heightened standard" of clear and convincing evidence to the trial court's factual findings).

We now make clear that we review findings of fact by a trial court in civil actions de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). When a trial court has

made no finding of fact, however, we conduct a de novo review to determine where the preponderance of evidence lies. See In re Valentine, 79 S.W.3d 539, 546 (Tenn. 2002). Following our evaluation of the facts, we review the trial court's order to determine whether the facts amount to clear and convincing evidence that the termination of parental rights is in the best interests of the children. See In re Bernard T., 319 S.W.3d at 596-97. Clear and convincing evidence is "evidence in which there is no serious or substantial doubt as to the correctness of the conclusions drawn from the evidence." In re Valentine, 79 S.W.3d at 546 (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). This standard of review is consistent with the standard of review for mixed questions of law and fact. See, e.g., Starr v. Hill, 353 S.W.3d 478, 481-82 (Tenn. 2011) ("Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination of the legal effect of its factual findings . . . .").

In its first order, the trial court clearly articulated its consideration of factors (1), (2), (3), (7), (8), and (9) in deciding whether termination was in the best interests of the children. The trial court found that Father had failed to meet his burden of proof as to factors (1), (2), (3), (7), (8), and (9). In sum, the trial court applied factors (1) and (7) and determined that Mother's release from prison was an adjustment of circumstances, Mother was not shown to be a danger to the children, the physical environment of her home was not shown to be unhealthy or unsafe, and no criminal activity was shown to be present in Mother's home. Applying factors (3) and (8), the trial court determined that Mother had attempted regular visitation with the children to the extent that it was within her power to do so and that there was no proof of Mother's mental or emotional status other than the personal opinions offered by Father and Stepmother. The trial court found that factor (9) referencing child support was not proven by Father,[7] and factor (2) referencing involvement by social services agencies was not applicable to the facts of the case. The trial court reaffirmed its findings as to these factors in its amended order. We cannot say that the evidence preponderates against the trial court's determination that these factors were not proven by Father.

As to factors (4), (5), and (6), we have carefully reviewed the testimony and the trial court's findings in its amended order. The trial court stated

. . . there was no expert testimony about the psychological or emotional impact that such a change in allowing the Mother more time in the children's lives

_____

[7] Although the marital dissolution agreement is not part of the record on appeal, the record reflects that neither party was required to pay a specific amount of support to the other. Mother testified that prior to her incarceration she and Father each paid half of the children's expenses. In addition, the amended parenting plan sets forth that the parties would return to provisions of the original parenting plan regarding Mother's responsibility to reimburse Father for medical expenses after Mother's release from incarceration.

would have. All the court had was testimony from the Stepmother and the children about their fear of what may happen during a visit with Mother. Expert evidence would have been helpful.

The trial court correctly reflected that expert testimony could have provided the trial court with a basis for determining the authenticity of the children's fear of Mother and a prediction of the psychological effect of required visitation.

The trial court found that Mother had a meaningful relationship with her daughters before she was incarcerated and that Mother attempted to reestablish a relationship with her children after she was released from prison. Mother's attempts to reestablish a relationship with her children, however, were frustrated by Father. We cannot conclude that the evidence preponderates against the trial court's findings.

Having concluded that the evidence does not preponderate against the trial court's findings of fact, we next determine whether the facts amount to clear and convincing evidence that the termination of Mother's parental rights is in the best interests of the children. See In re Bernard T., 319 S.W.3d at 596-97.

The trial court found that all nine of the non-exclusive factors weighed against a termination of Mother's parental rights. In addition, the trial court considered the 2004 modification of the parenting plan in determining the best interests of the children. Although we have concluded that the order amending the parenting plan has no preclusive effect on the determination of the best interests of the children, the trial court properly considered the parties' actions with respect to the modification of the parenting plan. The modification provided for visits with the children while Mother was imprisoned and addressed Mother's co-parenting rights after her release. After Father remarried, the children stopped visiting Mother in prison.

The trial court considered Father's acknowledgment that he entered into a mediated agreement "in the children's best interest" and that the mediation addressed the time frame when Mother was no longer incarcerated. At the time of the mediated agreement, Father was well-aware of Mother's criminal background. At the hearing on the termination of Mother's parental rights, Father based his assertion that Mother's parental rights should be terminated on essentially the same facts existing at the time of Mother's incarceration.

Having reviewed the record, we agree with the trial court that none of the factors support termination of Mother's parental rights. We therefore cannot conclude that Father has proven by clear and convincing evidence that it is in the best interests of the children to terminate Mother's parental rights. See In re Bernard T., 319 S.W.3d at 596-97.

-11-

## Substantial Risk of Harm

Finally, Mother raises the issue of whether the Tennessee constitution requires a trial court to make a finding that there is a substantial risk of harm to the children before a parent's rights can be terminated. It has long been the rule that this Court will not address questions not raised in the trial court. Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983); see also Tenn. R. App. P. 36(a). Moreover, we do not address constitutional questions unless it is necessary to adjudicate the rights of the parties. State v. Taylor, 70 S.W.3d 717, 720 (Tenn. 2002). This issue was not raised in the courts below and is unnecessary to our determination in this case. We therefore decline to address Mother's constitutional question.

## III.  Conclusion

We reverse the judgment of the Court of Appeals and affirm the trial court's amended order concluding that Father and Stepmother have not shown by clear and convincing evidence that terminating Mother's parental rights is in the best interests of the children. Costs of this appeal are taxed to Robert W. and Loy W., and their surety, for which execution may issue, if necessary.

_____
JANICE M. HOLDER, JUSTICE