IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 06, 2013

**IN RE MARK A. L.**

**Appeal from the Chancery Court for Coffee County**
**No. 2012CV363      Vanessa Jackson, Judge**

**No. M2013-00737-COA-R3-PT - Filed October 4, 2013**

The Coffee County Chancery Court terminated the parental rights of the father on two grounds: 1) abandonment by willful failure to support  pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(i) and 2) abandonment by willful failure to visit the child pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(i); and upon the determination that termination of the father's rights was in the best interest of the child. Father appeals. Finding the evidence clear and convincing, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Robert A. Croy, Manchester, Tennessee, for the appellant, Jeffrey L.[1]

Thompson G. Kirkpatrick, Manchester, Tennessee, for the appellees, Charles B. and Martha B.

**OPINION**

Jeffrey L. ("Father") filed a Petition for Visitation in the Juvenile Court of Coffee County on September 27, 2012. One month later, on October 23, 2012, Martha B. ("Mother") and her husband Charles B. ("Step-Father") countered by filing a Petition for the Termination of Parental Rights of Father and for Step-Parent Adoption ("Petition") in the Chancery Court of Coffee County. Thereafter, Father's petition for visitation was transferred to the chancery court and the two petitions were joined into one action.

_____

[1]This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

The petitions were tried in the chancery court on January 9, 2013. The principal witnesses were Mother and Father; also testifying were Step-Father and Russell H., who is Father's step-father. The evidence established that Father and Mother are the unmarried parents of one child, Mark L., born in June 2006 and they resided in Thomasville, Georgia when the child was born. The parties separated in June 2008, at which time Mother moved to Manchester, Tennessee; Father continued to reside in Georgia. By agreement of the parents, on July 14, 2008, temporary custody of the child was given to the paternal grandmother, Christy H. ("Grandmother") who resides across the street from Father in Thomasville, Georgia.

In January 2009, Mother married Charles B. ("Step-Father") and obtained physical possession of the child in February 2009. Mother gained exclusive legal custody of the child by order of the Juvenile Court of Thomas County, Georgia, in April of 2009.

Father testified he was employed but admitted that he did not pay child support in the four months preceding the filing of the October 23, 2012, petition to terminate his parental rights. He stated he did not pay support because he was saving money to pay his attorney to file the petition for visitation; however, this was contradicted by Russell H. who testified that he loaned Father the money to pay the attorney's fees.

Father admitted he did not pay child support in the years 2009, 2010, or 2012, despite being gainfully employed for all but one of those months. Father was employed with Martell Marine from April 2009 until September 2012, when his employment was terminated; one month later, Father obtained employment with Woodhaven Home Furnishings and continues to work for that firm. Father's income for the years 2009, 2010, and 2011 averaged more than $21,000. Father stated that he provided some support in 2011 and produced documentation of three money orders representing child support payments of $50 each made in late 2011. Mother acknowledged receiving two of the money orders, but denied receiving any other support in 2011 or 2012. Father also stated that he offered to provide child support but his offers were rejected by Mother; Mother stated she never excused Father from support.

Evidence of Father's visitation with the child was less clear. He visited with the child approximately eight times between February 2009, when the child moved to Tennessee, and 2012. In 2009, the child stayed in Georgia for a few weeks during the summer. The child would reside at Grandmother's residence mostly during the week, which was across the street from Father, and would reside with Father the rest of the time. Grandmother stated she visited the child in Mother's Tennessee home on numerous occasions since 2009. Although Grandmother made multiple trips to Tennessee to visit the child in 2009, 2010, and 2011, Father rarely drove with Grandmother to pick up the child, nor to return the child. Father traveled with Grandmother once to visit the child in Tennessee; on two or three other times

Father traveled with Grandmother to pick up the child to take him back to Georgia for an extended visit. Father stated that his failure to visit was due to Mother refusing visitation and a lack of money to travel to Tennessee.

In 2010, the child stayed in Georgia for winter break with the Father and Grandmother. In the summer of 2011, Grandmother drove to Tennessee to pick up the child and brought the child to Georgia where the child stayed for three weeks. During this three week visit, the child stayed with Grandmother, Father or the child's paternal great-grandmother; also during this visit the family took the child to Disney World for one week.

In 2012, Father visited with the child on two occasions. In July 2012, Father and his girlfriend traveled to Tennessee on one occasion, and Mother permitted the child to spend the night with them in a hotel room; the child was returned to Mother the next day. In December 2012, after the petitions were filed, the court granted Father supervised visitation, and Father visited with the child at Mother's home.

Upon the conclusion of the one-day trial, the trial court took the matter under advisement. On February 23, 2013, the court entered an order in which it found that Mother and Step-Father had presented clear and convincing evidence establishing grounds for termination based on abandonment for willful failure to support and willful failure to visit. The court also found that termination of Father's rights was in the best interest of the child based, in part, on the stable environment provided by Mother and Step-Father as well as the positive relationship between the minor child and Step-Father who had supported the child over the past four years.

Father filed a timely notice of appeal and he presents three issues for our review. He contends the trial court erred in finding: (1) the ground of abandonment for willful failure to support the child under Tennessee Code Annotated § 36-1-102(1)(A)(i); (2) the ground of abandonment for willful failure to visit the child under Tennessee Code Annotated § 36-1-102(1)(A)(i); and (3) that termination of Father's parental rights is in the best interest of the child.

## STANDARD OF REVIEW

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013) (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). When a trial court has made findings of fact, we review the findings de novo on the

record with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Adoption of Angela E.*, 402 S.W.3d at 639 (citing *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013)). We next review the trial court's order de novo to determine whether the facts amount to clear and convincing evidence that one of the statutory grounds for termination exists and if so whether the termination of parental rights is in the best interests of the children. *In re Adoption of Angela E.*, 402 S.W.3d at 639 (citing *In re Taylor B.W.*, 397 S.W.3d at 112). Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id*. (citing *In re Valentine*, 79 S.W.3d at 546 (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)) (internal quotation marks omitted).

We must now consider the statutory grounds at issue for termination: abandonment by failure to support the child, abandonment by failure to visit with the child, and whether the evidence clearly and convincingly establishes one or more of these grounds.

**ANALYSIS**

I. ABANDONMENT

Abandonment is defined as the willful failure to visit, to support, or to make reasonable payments toward the support of the child during the four-month period preceding the filing of the petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). To prove the ground of abandonment, a petitioner must establish by clear and convincing evidence that a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so. *In re Adoption of Angela E.*, 402 S.W.3d at 639 (citing *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005)). Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law. *Id*. (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). We review questions of law de novo with no presumption of correctness. *Id*. (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810).

In this case, the trial court found that Father abandoned his child in two ways: willful failure to support and willful failure to visit during the four-month time period preceding the filing of the Petition. Parental rights may be terminated upon the findings of grounds on either failure to support or failure to visit, or both. *See In Re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009). Thus, we shall discuss each ground of abandonment separately.

## A. Abandonment by Failure to Support

Tennessee Code Annotated § 36-1-113(g)(1) establishes a ground for termination of parental rights based upon abandonment as defined in Tennessee Code Annotated § 36-1-102. The definition of abandonment set forth in Tennessee Code Annotated § 36-1-102(1)(A)(i) reads:

> "For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child . . . ."

To find abandonment by failure to support, it must be established that the failure to support was "willful." *In re R.L.F.*, 278 S.W.3d 305, 320 (Tenn. Ct. App. 2008). Failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In Re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). The fact the parent was not under an order to pay support is not dispositive of the question of whether the failure is willful; the obligation to pay support exists in the absence of a specific order. *Tenn. Dep't of Children's Servs. v. Culbertson*, 152 S.W.3d 513, 523-24 (Tenn. Ct. App. 2004). The foregoing notwithstanding, a parent cannot be said to have abandoned a child when his failure to support is due to circumstances outside his control. *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810 (holding that the evidence did not support a finding that the parents "intentionally abandoned" their child)).

Father contends his failure to support the child during the pertinent four-month period was not willful because he was trying to save money to hire an attorney to file a visitation petition. He also stated that he purchased the child a pair of shoes and other items during his July 2012 visit. In addition, he testified to sending $300 worth of clothing to the child in 2012, but he did not produce any evidence of those purchases, and Mother denied receiving any such items.

The trial court found Father lacked credibility, and we, as an appellate court, are obliged to yield to credibility determinations made by the trial court. With regard to credibility determinations, this court has stated:

When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. Further, "[o]n an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings."

*In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (quoting *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990)).

The record before us clearly supports the finding that Father was not a credible witness. For one, the testimony of Russell H., Father's step-father, directly contradicted Father's only justification for not paying support during the critical four-month period. Father testified he was saving his money to hire an attorney; Russell H. testified that he loaned Father the money to hire the attorney. Two, Father's contention that he sent $300 worth of clothing to the child in 2012 was both unsupported and undocumented and it was refuted by Mother; she expressly denied receiving any such items.

We also find Father's excuses for failing to pay support during the four-month period and the preceding four-year period, except for the two undisputed $50 payments sent in 2011, to be unconvincing. Father was gainfully employed for the majority of the four years preceding the petition, and yet, he could only document sending three $50 money orders during that time. Moreover, he provided no proof to substantiate his claim that Mother refused to accept support at any time; to the contrary, Mother admitted receiving two of the three $50 money orders Father said he mailed.

As for Father's statement that he provided shoes and other items for the child during his July 2012 visit within the four-month period, such gifts would constitute mere token support, which is not sufficient to preclude a finding of a willful failure to support. Token support is support that "under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). In the context of token support, the word "means" connotes both income and available resources for the payment of debt. *In re Adoption of Angela E.*,402 S.W.3d at 641 (citing *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *11 n.24 (Tenn. Ct. App. June 3, 2003)).

In this case, the trial court found that Father had the ability to pay support during the determinative four-month period upon the evidence of his gainful employment. Furthermore, the trial court found that Mother never excused him from paying support. Based upon this and other facts in the record, the trial court concluded that the evidence clearly and

convincingly established that Father willfully failed to support his child during the four-month period. The record fully supports the trial court's finding; thus, we affirm the finding that Father abandoned his child by willfully failing to support the child during the four-month period preceding the filing of the petition to terminate parental rights pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(i).

## B. ABANDONMENT BY FAILURE TO VISIT

Parental rights may be terminated based upon the ground of abandonment for willfully failing to visit the child, which is defined as when a parent "willfully failed to visit . . . the child for the period of four consecutive months preceding the filing of the petition to terminate that parent's rights." Tenn. Code Ann. § 36-1-102(1)(A)(i).

Failure to visit a child is "willful" when a parent is aware of his or her duty to visit, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005). However, where the failure to visit is *not* willful, a failure to visit a child for four months does not constitute abandonment. *R.G.W. v. S.M.*, No. M2009-01153-COA-R3-PT, 2009 WL 4801686, at *7 (Tenn. Ct. App. Dec.14, 2009) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). "A parent who attempted to visit and maintain relations with his child, but was thwarted by the acts of others and circumstances beyond his control, did not willfully abandon his child." *Id.* (citing *In re Swanson*, 2 S.W.3d 180, 189 (Tenn. 1999)).

Tennessee Code Annotated § 36-1-102(1)(E) states that, "'willfully failed to visit' means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." "[T]oken visitation," is visitation "under the circumstances of the individual case [which] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

Father contends he did not willfully fail to visit his child because he was actively litigating a visitation and support petition which he filed in September 2012, one month before the filing of the termination petition. He also contends he did not abandon his child because he visited for two days in July 2012, which was during the determinative four-month period. Father relies on *In re Adoption of A.M.H.,* 215 S.W.3d 793 (Tenn. 2007) and *In re Chelbie F.,* No. M2006-01889-COA- R3-PT, 2007 WL 1241252 (Tenn. Ct. App. Apr. 27, 2007). In that case the parents were actively pursuing visitation within the courts during the pertinent four-month period and, importantly, the parents had continually visited and maintained a relationship with their child while she was in temporary foster care. *In re Adoption of A.M.H.*, 215 S.W.3d at 798. The record before us reveals that Father did not

actively or continually visit or maintain a relationship with the child at any time. Thus, Father's reliance on *In re Adoption of A.M.H.* is misplaced.

Moreover, Father's reliance on *Chelbie F.* is also misplaced. In that case the father failed to support or visit with his child for approximately seven years. *In re Chelbie F.*, 2007 WL 1241252 at *1. However, the court found that despite this failure, the father did not willfully abandon his child because he had actively sought visitation rights through the courts for seven years. *Id.* at *6. In fact, the father had filed three petitions for visitation over the seven year period after the mother had concealed the child's whereabouts, discouraged his efforts to visit the child, and spurned his efforts to provide financial support. *Id.* Moreover, the mother admitted that she did not want the father to visit with the child or to provide financial support. *Id.* For these reasons, the court found no abandonment. *Id.* Under the facts of this case, Mother never excused payment of child support nor did she interfere with or deny visitation, a fact clearly evident from the liberal visitation, including extended trips granted to Grandmother. Although there is some testimony from the witnesses that indicates a lack of communication, there was no outward denial or refusal to visit. Further, as noted above, Father failed to accompany Grandmother on her frequent visits. Accordingly, Father's visitation was nothing more than token. Tenn. Code Ann. § 36-1-102(1)(C).

The trial court found that the petitioners proved by clear and convincing evidence that Father failed to make any significant effort to visit the child or maintain a relationship with him. Father admitted that, in the past four years, he has seen the child a mere six to eight times. Moreover, Father made only one attempt to visit the child during the pertinent four-month period. As the trial court correctly noted, if it were not for Grandmother's efforts, Father would have had no contact with child during the past four years.

For the foregoing reasons, we affirm the finding that Father willfully failed to visit the child during the determinative four-month period; thus, the ground of abandonment under Tennessee Code Annotated § 36–1–113(g)(1) for willful failure to visit is affirmed.

## II. BEST INTEREST OF THE CHILD

The General Assembly has provided a list of factors for the court to consider when conducting an analysis of the best interests of the children. *See* Tenn. Code Ann. § 36-1-113(i)(1)-(9). Those factors, which are well known and need not be repeated here, are not exclusive or exhaustive, and the court may consider other factors. *See In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Moreover, not every statutory factor need apply; a finding of but a few significant factors may be sufficient to justify a finding that termination of the parent-child relationship is in the child's best interest. *Id.* at 667. The child's best interest is to be determined from the perspective of the child rather than the parent. *See State,*

*Dep't of Children's Servs. v. L.H.*, No. M2007-00170-COA-R3-PT, 2007 WL 2471500, at *7 (Tenn. Ct. App. Dec. 3, 2007) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

It is clear from the record that Mother and Step-Father have provided a stable and nurturing home for the child. Step-Father has established a strong relationship with the child and has financially supported the child since 2009 due to Father's failure to provide support. He is involved in the child's church, sports, and school activities. Further, he is willing to adopt the child as his own, and the child calls him "Daddy."

There is also clear and convincing evidence that Father has abandoned the child by willfully failing to pay child support and visit with the child. Father has made an insignificant effort to establish or maintain a relationship with the child.

Considering these relevant factors from the perspective of the child, the evidence clearly and convincingly established that it is in the child's best interest that Father's parental rights be terminated.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Father.

_____
FRANK G. CLEMENT, JR., JUDGE