IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2025

IN RE SKYLAR K. ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No. 22-CV-1543     Adrienne Gilliam Fry, Judge**

_____

**No. M2024-01890-COA-R3-JV**

_____

A circuit court found four children dependent and neglected because they were suffering from abuse or neglect.  It also determined that the children's father committed severe child abuse.  Upon review, we conclude that the court's severe child abuse finding is not supported by clear and convincing evidence.  So we reverse that finding and affirm the lower court's decision as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, P.J., E.S., and VALERIE L. SMITH, J., joined.

James R. Potter, Clarksville, Tennessee, for the appellant, Matthew K.

Laurence M. McMillan, Jr., Clarksville, Tennessee, for the appellee, Cynthia R.

Jonathan Skrmetti, Attorney General and Reporter, J. Matthew Rice, Solicitor General, and Mara L. Cunningham, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.**

The Department of Children's Services ("DCS") petitioned the juvenile court to declare four minor children dependent and neglected after a fatal altercation in their home left the children's mother ("Mother") and maternal grandfather ("Grandfather") dead.  The

juvenile court adjudicated the children dependent and neglected and found they were victims of severe child abuse perpetuated by their father, Matthew K. ("Father"). It placed the children in the maternal grandmother's custody and awarded Father a limited amount of supervised visitation. Father appealed the decision to circuit court.

After a de novo trial, the circuit court made these factual findings. When this incident occurred, Father and Mother were in the midst of a divorce. Still, their relationship remained amicable. They continued to live in the same house with their four young children.[1]

One winter evening, Father reported a fatal shooting at the family home. The children were in another room when the violence occurred. One child reported hearing a gunshot, and at least two saw the aftermath. Both Mother and Grandfather died. Father, the sole surviving eyewitness, was initially charged with two counts of first-degree murder. But the district attorney entered a nolle prosequi dismissing the charges before trial.

The court acknowledged that none of the children "were physically harmed or abused in any way." Nor was there any expert testimony that the incident caused or was likely to cause severe mental health issues. But the children did not escape unscathed. Their medical records showed that they had been dealing with "post-traumatic stress issues since the night in question."

According to Father, Grandfather unexpectedly brought a loaded gun into the house. He shot Mother and would have shot Father had the gun not misfired. To protect himself and his family, Father tackled Grandfather, disarmed him, and knocked him unconscious. Grandfather regained consciousness about five minutes later. Still perceiving Grandfather to be a threat, Father forcefully subdued him a second time, ultimately causing his death.

Given the lack of contrary proof, the court largely accepted Father's version of events. The court found it "conceivable" that Father initially assaulted Grandfather in self-defense. It would be "reasonable to defend one's home and family even with lethal force if someone attacks with a gun." But the court faulted Father for his second assault on Grandfather. In the court's view, Grandfather posed no danger to the family after the first beating.

The court believed that Father, a paramedic, had become desensitized to anger and violence based on his previous statements and "how he handled disciplining his child." A witness reported that Father once said, "If anyone ever points a gun at me, it will be the last mistake they ever make." In talking about his job as a paramedic, Father had previously expressed the sentiment, "if they die, oh well." Proof at trial also included a "spanking episode" captured on the family's Ring camera. The video showed Father physically

---

[1] The children ranged in age from two to seven.

disciplining one of the children for disobeying Mother. Father admitted that he had done this before. The court found it "especially disturbing" that Father routinely used "excessive" physical discipline on the children.

The court adjudicated the children dependent and neglected upon finding that they were "neglected and in a condition of want and suffering." *See* Tenn. Code Ann. § 37-1-102(b)(13)(F), (G) (Supp. 2020).[2] Given that finding, it also determined that Father had committed severe child abuse under two statutory definitions. *See id.* § 37-1-102(b)(27)(A), (B). The court found that it was in the children's best interest to remain in the maternal grandmother's custody. But, unlike the juvenile court, it granted Father extensive unsupervised visitation. This appeal followed.

## II.

### A.

Tennessee courts have long recognized the right of a biological parent to the care and custody of his children. *In re Adoption of Female Child*, 896 S.W.2d 546, 547 (Tenn. 1995) (quoting *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993)). Still, when a child is declared dependent and neglected, this right may be limited. *In re Samaria S.*, 347 S.W.3d 188, 201 (Tenn. Ct. App. 2011). "The primary purpose of dependency and neglect proceedings 'is to provide for the care and protection of children whose parents are unable or unwilling to care for them.'" *Id.* (quoting *Tenn. Dep't of Child.'s Servs. v. M.S.*, No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *9 n.11 (Tenn. Ct. App. Mar. 8, 2005)). But the proceeding is not against the parents. *Tenn. Dep't of Child.'s Servs. v. Huffines-Dalton*, No. M2008-01267-COA-R3-JV, 2009 WL 1684679, at *6 (Tenn. Ct. App. June 15, 2009). It is an inquiry to determine the status of the child. *Id.*

Juvenile courts have exclusive, original jurisdiction to hear dependency and neglect petitions. Tenn. Code Ann. § 37-1-103(a)(1)(C) (2025). Ordinarily, dependency and neglect cases are tried in two phases: the adjudicatory phase and the dispositional phase. *Id.* § 37-1-129(b) (Supp. 2020). *But see In re Caleb L.C.*, 362 S.W.3d 581, 595 (Tenn. Ct. App. 2011) (holding the statute permits the trial court to combine both phases into one hearing). In the adjudicatory phase, the court determines whether the child is dependent and neglected within the meaning of the statute. Tenn. Code Ann. § 37-1-129(b)(1); *see generally id.* § 37-1-102(b)(13) (defining "dependent and neglected child"). If not, the case must be dismissed. *Id.* § 37-1-129(b)(1). But if the court makes the necessary finding, it proceeds to the dispositional phase. *Id.* § 37-1-129(b)(2). In this phase, the court determines a custody arrangement "best suited to the protection and . . . welfare of the child." *Id.* § 37-1-130(a) (Supp. 2020).

---

[2] We apply the law in effect when the dependency and neglect petition was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

When, as here, the court finds a child is dependent and neglected because he or she "is suffering from abuse or neglect," it must decide "whether the parents or either of them or another person who had custody of the child committed severe child abuse." *Id.* §§ 37-1-102(b)(13)(G), -129(b)(2). A severe child abuse finding has serious consequences. *In re Samaria S.*, 347 S.W.3d at 201. Chief among them is the reality that the finding effectively establishes a statutory ground for termination of the responsible parent's parental rights. *Id.*; *see* Tenn. Code Ann. § 36-1-113(g)(4) (Supp. 2025); *see also* Tenn. Code Ann. § 37-1-130(c) (precluding a court from returning a victim of severe child abuse "to the custody or residence of any person who engaged in or knowingly failed to protect the child from the brutality or abuse unless the court finds on the basis of clear and convincing evidence that the child will be provided a safe home free from further such brutality and abuse").

Aggrieved parties in a dependency and neglect proceeding may appeal to the circuit court for a de novo trial. Tenn. Code Ann. § 37-1-159(a) (2025). "A *de novo* trial is '[a] new trial on the entire case-that is, on both questions of fact and issues of law-conducted as if there had been no trial in the first instance.'" *Cornelius v. Tenn. Dep't of Child.'s Servs.*, 314 S.W.3d 902, 906 (Tenn. Ct. App. 2009) (quoting *Kissick v. Kallaher*, No. W2004-02983-COA-R3-CV, 2006 WL 1350999, at *3 (Tenn. Ct. App. May 18, 2006)). Thus, the circuit court makes a fresh determination based on the evidence presented. *Tenn. Dep't of Child.'s Servs. v. T.M.B.K.*, 197 S.W.3d 282, 289 (Tenn. Ct. App. 2006); *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004).

B.

The circuit court found the children were dependent and neglected, as defined in Tennessee Code Annotated § 37-1-102(b)(13)(G), because they were in the home when this fatal altercation occurred. Father does not contest this finding or the court's disposition ruling. He challenges the severe child abuse finding.[3]

"Severe child abuse in a dependency and neglect proceeding must . . . be established by clear and convincing evidence." *In re S.J.*, 387 S.W.3d 576, 587 (Tenn. Ct. App. 2012); *M.S.*, 2005 WL 549141, at *10 (concluding that the clear and convincing standard must be applied because of the ramifications of a severe child abuse finding). "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

We normally use a two-step process to review a severe abuse finding. *In re S.J.*,

___

[3] Only the maternal grandmother defends the severe abuse finding on appeal.

387 S.W.3d at 587; *In re Samaria S.*, 347 S.W.3d at 200; *see also In re Markus E.*, 671 S.W.3d 437, 457 (Tenn. 2023) (applying the same two-step process in a parental termination appeal). First, we review any underlying findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); TENN. R. APP. P. 13(d). We then make our own determination about "whether the combination of all of the individual underlying facts, in the aggregate, constitutes clear and convincing evidence" that the parent committed severe child abuse. *In re Markus E.*, 671 S.W.3d at 457; *In re Samaria S.*, 347 S.W.3d at 200.

Father does not question the court's underlying findings. Rather, he argues that these findings, even in combination, do not amount to clear and convincing evidence that he committed severe child abuse.

The court found Father committed severe child abuse as defined in Tennessee Code Annotated § 37-1-102(b)(27)(A) and (B). When this petition was filed, the definition in subpart (A) required proof of "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death." Tenn. Code Ann. § 37-1-102(b)(27)(A)(i). Unlike the finding of dependency and neglect, which focuses solely on the status of the child, the severe child abuse inquiry under this definition necessarily includes an assessment of the parent's state of mind. The parent's conduct must be "knowing." *In re Markus E.*, 671 S.W.3d at 460; *In re Samaria S.*, 347 S.W.3d at 205. Conduct is "knowing" when a person "has actual knowledge of the relevant facts and circumstances or when he or she is either in deliberate ignorance of or in reckless disregard of the information that has been presented to him or her." *In re Markus E.*, 671 S.W.3d at 461 (quoting *In re S.J.*, 387 S.W.3d at 592).

We are not firmly convinced that Father committed severe child abuse as defined in § 37-1-102(b)(27)(A). The court reasoned that the children could have easily walked into the room where the fatal altercation occurred and been "shot themselves or physically harmed in any scuffle that took place." *See In re Damian M.*, No. E2015-02353-COA-R3-JV, 2016 WL 5928981, at *7 (Tenn. Ct. App. Sept. 30, 2016) (recognizing that the statutory definition does not require proof of actual physical injuries); *In re Kaitlin W.*, No. E2015-01553-COA-R3-PT, 2016 WL 2931326, at *9 (Tenn. Ct. App. May 16, 2016) (affirming severe child abuse finding when children "were exposed to serious dangers including serious bodily injury or death" despite being unharmed). True, but the evidence is less than clear and convincing that Father knowingly exposed the children to this danger or knowingly failed to protect them. The court found that Grandfather, not Father, was the initial aggressor. Once aware of the danger, Father took immediate action to protect the children. *See In re Markus E.*, 671 S.W.3d at 462 (explaining that under the "knowing" standard, "evidence is generally required to show the parent was presented with facts, circumstances, or information that would alert a reasonable parent to take affirmative action to protect the child"). Regrettably, Grandfather died from Father's overly zealous

5

efforts to subdue him. According to the court, Father misjudged the danger level. Still, that fact alone under these circumstances does not amount to clear and convincing evidence that he knowingly exposed the children "to abuse or neglect that is likely to cause serious bodily injury or death." Tenn. Code Ann. § 37-1-102(b)(27)(A)(i). The children did not witness the assault. Absent proof of relevant facts or circumstances that should have put Father on notice that his actions placed the children at risk of physical harm, we must reverse the court's finding that Father committed severe child abuse as defined in Tennessee Code Annotated § 37-1-102(b)(27)(A).

We also reverse the court's finding that Father committed severe child abuse as defined in Tennessee Code Annotated § 37-1-102(b)(27)(B), albeit for a different reason. When this petition was filed, the definition in subpart (B) required proof of

> [s]pecific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, [or] the knowing failure to protect a child from such conduct.

*Id.* § 37-1-102(b)(27)(B). Expert proof is mandatory under this definition. *Tenn. Dep't of Child.'s Servs. v. M.P.*, 173 S.W.3d 794, 804 (Tenn. Ct. App. 2005); *see also In re Samaria S.*, 347 S.W.3d at 204. No qualified expert provided the requisite opinion here. The children's medical records do not suffice. *See M.P.*, 173 S.W.3d at 804. Without expert opinion testimony, the proof does not support a finding that Father committed severe child abuse as defined in § 37-1-102(b)(27)(B). *See id.*

## III.

Because the proof is less than clear and convincing, we reverse the court's finding that Father committed severe child abuse as defined in Tennessee Code Annotated § 37-1-102(b)(27)(A) and § 37-1-102(b)(27)(B). We affirm the court's decision as modified and remand for further proceedings consistent with this opinion.

s/ W. Neal McBrayer
W. NEAL McBRAYER, JUDGE

6