IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 11, 2014

## IN RE: ALEXIS L., ET AL.

**Appeal from the Juvenile Court for Macon County**
**No. 2013JV7     Ken Witcher, Judge**

_____

**No. M2013-01814-COA-R3-PT - Filed April 30, 2014**

_____

Mother appealed the trial court's determination that several grounds for terminating her parental rights had been met and that termination was in the best interest of her children. She failed to appeal or argue one of the grounds for termination, so the trial court's finding regarding that ground is final. Because only one ground need be found, we decline to examine the other grounds. We agree with the trial court's determination that clear and convincing evidence existed to conclude that termination of Mother's parental rights is in the best interest of the children.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Bruce N. Oldham, Gallatin, Tennessee, for the appellant, Amy C.

Robert E. Cooper, Jr., Attorney General and Reporter and Mary Byrd Ferrara, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

In February 2012, the Department of Children's Services ("DCS") received a referral regarding abuse or neglect of a child based on drug exposure and lack of supervision. Amy C. ("Mother") and Steven L. ("Father")[1] had two daughters, Alexis and Destiny, and one son,

_____

[1]Father is not involved in this appeal.

Bryson. Father was incarcerated in the Macon County jail. On February 8, 2012, Mother was arrested for violation of probation for testing positive for THC, morphine, and benzodiazepines. The Juvenile Court of Macon County placed the children in the custody of DCS. Mother participated in and signed off on a family permanency plan. The many requirements of the plan included that Mother was to make child support payments; demonstrate that she could financially provide for the children and provide a safe and suitable home for them; refrain from the use of illegal and non-prescribed drugs and alcohol; complete a drug and alcohol assessment and follow up with all recommendations; and participate in a mental health assessment and follow through with all recommendations.

Mother was released from jail on March 9, 2012, but did not contact DCS until about two weeks after her release. For the next several months, she did not maintain regular contact with the children or DCS. In the four months after the removal of her children, she only visited them twice. A violation of probation warrant was issued at the end of April and she spent some time "on the run" trying to avoid arrest. Mother was, however, arrested June 27, 2012 and remained in jail until August 15, 2012. Due to Mother's attempt to avoid arrest and subsequent incarceration, she did not visit the children again until September 14, 2012.

On October 23, 2012, Mother was arrested again for violating her probation—she tested positive for cocaine. She remained in jail until November 6, 2012, when she entered The Next Door residential treatment center. She was released on December 6, 2012 and went to Sober Living Halfway House, where she remained until May 2013.

After their removal, the children were placed in foster care through Camelot Care Center, a DCS contractor. They had a number of behavioral issues. These issues caused them to be placed in a new foster home in May 2012. Their behavior caused them to "disrupt out of the program" in July 2012. During the time in which the children's foster care was handled by Camelot, Mother visited the children twice, once in March and once in April. She missed a school luncheon with the children, an absence that distressed the children.

After leaving the Camelot Care Center foster care program, the children moved to Youth Villages Foster Care, another DCS contractor. Due to behavioral issues, the son was placed in a separate foster home from the daughters. All three children receive medication to help control their behavior, and they all receive counseling. At present, the girls are in a preadoptive foster home, and the boy is in a foster home that is seriously considering adoption.

Mother has not worked regularly since her release from rehabilitation. Her DCS caseworker drove her to Memphis to visit her children in January, February, March and April

2013. She did not attend a visit scheduled for May. She did not schedule a visit for June. She did not attend two visits set for July. Mother has not paid any child support since the children have been in DCS custody.

The petition to terminate Mother's parental rights was filed January 4, 2013. In an order entered July 12, 2013, the trial court found by clear and convincing evidence that Mother's parental rights should be terminated for (1) willful failure to visit and willful non-payment of support, (2) abandonment based on failure to make reasonable efforts to provide a suitable home, (3) substantial noncompliance with the permanency plan, (4) persistent conditions, and (5) wanton disregard for the welfare of the children. Mother appealed the trial court's finding regarding grounds (1) through (4).

ANALYSIS

The trial court found five grounds to terminate Mother's parental rights. Mother appealed four of these grounds. She did not appeal the ground of wanton disregard for the welfare of the children. The "wanton disregard" ground has not been briefed by Mother. A party's failure to argue an issue in its brief constitutes a waiver of that issue.[2] *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011). Because the issue is waived, the trial court's determination that this ground for termination of parental rights has been met is final. Addressing the issues Mother raised regarding the other grounds for termination would change nothing and amount to an advisory opinion, so we respectfully decline to address those issues. *See In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (holding that the trial court may terminate parental rights on the basis of only one statutory ground).

Mother also claims that the termination of her parental rights is not in the best interest of the children. Besides finding grounds for termination of parental rights, the courts must also find by clear and convincing evidence that it is in the children's best interest to terminate the parent-child relationship. Tenn. Code Ann. § 36-1-113(c)(2). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *In re Taylor B. W.*, 397 S.W.3d 105, 112 (Tenn. 2013). We must then determine whether the facts, as found by the

---

[2]We note that the "wanton disregard" ground of Tenn. Code Ann. § 36-1-102(1)(A)(iv) (a definition of abandonment which includes "wanton disregard for the welfare of the child") and Tenn. Code Ann. § 36-1-113(g)(1) (providing that abandonment is a ground for termination of parental rights) was pled in the complaint. This ground was also mentioned in the State's opening and closing statements at trial. The trial court clearly ruled that, "The Respondent, [Mother], engaged in such conduct prior to incarceration as to exhibit a wanton disregard for the welfare of the children."

trial court or as supported by the preponderance of the evidence, clearly and convincingly establish that termination of parental rights is in the children's best interest. *Id*.

The trial court properly considered the factors listed in Tenn. Code Ann. § 36-1-113(i):

> "(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian[.]"

The trial court found that Mother had not made such an adjustment. We note that Mother had been incarcerated several times since the children were removed and, at the time of trial, she was sharing an apartment with another person from the halfway house.

> "(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible[.]"

The trial court found that the State made reasonable efforts to assist Mother and that lasting adjustments did not appear possible. We agree that DCS made reasonable efforts to assist Mother. We also commend Mother on her seven months of sobriety. Yet, other important goals, such as maintaining stable employment and a proper place for the family to live, had not been achieved.

> "(3) Whether the parent or guardian has maintained regular visitation or other contact with the child[.]"

The trial court found that Mother had not maintained regular visitation or contact with the children. We agree that Mother's visitation and phone calls with the children were sporadic at best.

> "(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child[.]"

The trial court found that a meaningful relationship between Mother and the children had not been established. Yet, Stephanie Piper, a therapist with Camelot Care Center, testified that there was a strong bond between Mother and the children. Amy Johnson, the DCS case manager, also testified to the bond between Mother and the children. Their testimony was essentially unrebutted. Consequently, we find that the evidence preponderates against the trial court's finding on this factor.

4

"(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition[.]"

No finding was made on this factor.

"(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household[.]"

No finding was made on this factor.

"(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner[.]"

No findings were made about Mother under this factor.

"(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child[.]"

The trial court found that both parents' emotional status would be "detrimental to the children and/or prevent them from effectively providing safe and stable care and supervision for the children." Specifically as to Mother, the trial court said the following:

Mother's arguments – basically I agree with how it's been argued by Ms. Choate [the DCS attorney] and Ms. Underwood [the Guardian Ad Litem], her arguments are what's for her best interest. That's basically what I've heard today, is what is in her best interest. . . But she hasn't done anything for the children.

Essentially, the trial court found that Mother's entire focus, emotional and physical, had been on her recovery from drug addiction, stating:

Even though she's done a lot to help herself with her drug problem she still doesn't have anything to help the children with. She doesn't have a home for

5

them, doesn't have a sufficient income to support them, or, in my opinion, just the ability to take care of the children.

We agree.

"(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101."

The trial court found that Mother had not paid child support. Mother admitted that she had paid no child support since the children were placed in foster care. We note that the permanency plan required Mother to pay child support as ordered by the court or voluntarily.

CONCLUSION

The trial court found by clear and convincing evidence that it was in the best interest of the children to terminate Mother's parental rights. We concur. Costs of appeal are assessed against Mother, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

6