IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2017

## IN RE BRIANNA B.

**Appeal from the Juvenile Court for Hardin County**
**No. 2017-JV-2051   Daniel L. Smith, Judge**

_____

### No. W2017-01181-COA-R3-PT

_____

This appeal involves the termination of a father's parental rights to his minor child. The father is currently serving an eleven-year prison sentence after pleading guilty to vehicular homicide, with the victim being the child's mother. The child's maternal aunt and uncle, who had been granted custody of the child, filed a petition to terminate the father's parental rights. The trial court terminated the father's parental rights upon finding by clear-and-convincing evidence that four grounds for termination were proven, and that termination was in the child's best interest. The father appeals. We reverse the decision of the trial court as to three of the grounds for termination. However, we affirm the trial court's decision as to one ground, and that termination of the father's parental rights is in the child's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part, Affirmed in Part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined

Terry Lee Dicus, Jr., Savannah, Tennessee, for the appellant, Shane B.

Chadwick G. Hunt, Savannah, Tennessee, for the appellees, Waylon M. and Nicole M.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Shane B. ("Father," or "Appellant") is the legal father of Brianna B. (d.o.b October 2014 ) (the "child").[1] On May 28, 2015, Brianna B.'s biological mother Wyndy

---

[1] In termination of parental rights cases, it is the policy of this Court to abbreviate the names of minor children and other parties in order to protect their identities.

H. ("Mother") was killed in a motor vehicle accident, in which Mother was a passenger in the vehicle and Father was the driver. Father was also seriously injured in the accident, and unable to care for the child. Accordingly, on the same day of the accident, Father gave physical custody of Brianna B. to the child's maternal grandfather Keith M. ("Grandfather") and his wife Jennifer M. ("Grandmother").

According to the trial court's order of August 22, 2017, on June 15, 2015, the child was placed in the legal custody of Grandfather and Grandmother.[2] Father was arrested for his role in Mother's death on October 27, 2015, and ultimately he pled guilty to vehicular homicide and DUI. On June 21, 2016, Father was sentenced to eleven years of imprisonment.

Also, according to the trial court's order of August 22, 2017, on August 22, 2016,[3] the child was adjudicated dependent and neglected, and legal custody was awarded to Mother's brother Waylon M. ("Uncle") and his wife Nicole M. ("Aunt"). The child has resided with them since that date at their home in Florida.

On February 13, 2017, Aunt and Uncle filed a petition seeking the termination of Father's parental rights on the following grounds: (1) abandonment by failure to visit; (2) abandonment by failure to support; (3) abandonment by failure to establish a suitable home; (4) abandonment by incarceration; (5) persistence of conditions; (6) incarceration with a child under age eight and a sentence over ten years; (7) wrongful death of the other parent; (8) parental incompetence; and (9) failure to assume responsibility. Moreover, the petition stated that termination of Father's rights would be in the best interest of the child.

After Father was provided notice, a hearing was held on the petition to terminate his parental rights on May 15, 2017. Father was represented by appointed counsel at the hearing, and the child was represented by an appointed guardian ad litem. At the hearing, Aunt, Uncle, Father, and Grandfather testified. On May 22, 2017, the trial court entered an order terminating Father's parental rights on the following grounds: (1) incarceration with a child under age eight and a sentence over ten years;[4] and (2) persistence of conditions. The trial court also found that it was in the child's best interest to terminate Father's parental rights.

---

[2] The record does not contain an order from July 2015, and the record is unclear concerning the exact dates of the proceedings. However, the trial court's August 22, 2017 order states that the July 2015 proceedings took place, and legal custody of the child was awarded to Grandfather and Grandmother, confirmed pursuant to an order of July 13, 2015.

[3] The record also does not contain the trial court's order of August 22, 2016.

[4] *See* Tenn. Code. Ann. § 36-1-113(g)(6).

On June 8, 2017, Father timely appealed. However, on August 7, 2017, because the trial court failed to rule on all claims asserted in the petition, this Court ordered Father to obtain a final order. On August 22, 2017, the trial court entered an "Amended Order Terminating Parental Rights and Final Decree of Guardianship," holding that Aunt and Uncle had established the following grounds for termination of Father's parental rights: (1) incarceration with a child under age eight and a sentence over ten years;[5] (2) incarceration at the time of the institution of the termination proceedings when the parent has engaged in conduct prior to incarceration exhibiting a wanton disregard for the welfare of the child;[6] (3) abandonment by failure to establish a suitable home;[7] and (4) persistence of conditions.[8] On August 24, 2017, Father filed an amended notice of appeal. The appeal is now properly before this Court.

**ISSUES PRESENTED**

Father raises a single issue on appeal:

I. Whether the trial judge erred in determining that termination of Father's parental rights is in the best interest of the child.

The Tennessee Supreme Court has directed this Court to consider the sufficiency of the trial court's findings in regards to each statutory ground upon which termination is granted and as to whether termination is in the child's best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016). We must consider the sufficiency of these findings regardless of whether the parent challenges those findings on appeal. *Id*. Therefore, in addition to addressing the sole issue raised by Father, we will also review the trial court's findings as to the following statutory grounds upon which the trial court granted termination of Father's parental rights:

1. Incarceration under the circumstances described in Tennessee Code Annotated Section 36-1-113(g)(6).[9]
2. Abandonment by incarceration under the circumstances described in Tennessee Code Annotated Section 36-1-102(1)(A)(iv).

---

[5] *See* Tenn. Code Ann. § 36-1-113(g)(6).

[6] *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv).

[7] *See* Tenn. Code Ann. § 36-1-102(1)(A)(ii).

[8] *See* Tenn. Code Ann. § 36-1-113(g)(3).

[9] A parent's rights may be terminated if the parent has been convicted of a crime and sentenced to prison for a period of ten years or more, and the child is under the age of eight at the time of the conviction. *See* Tenn. Code Ann. § 36-1-113(g)(6).

3. Abandonment by failure to establish a suitable home, as described in Tennessee Code Annotated Section 36-1-102(1)(A)(ii).

4. Persistence of the conditions that led to the removal of the child from the parent's custody, as described in Tennessee Code Annotated Section 36-1-113(g)(3).

## STANDARD OF REVIEW

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington*, 483 S.W.3d at 522. Although constitutionally protected, parental rights are not absolute. *Id.* at 522. Tennessee courts are vested with the authority to terminate parental rights when necessary to prevent serious harm to children. *Id.* A decision terminating parental rights is final and irrevocable. *See* Tenn. Code Ann. § 36-1-113. Therefore, parents are constitutionally entitled to fundamentally fair procedures in termination proceedings. *See In re Carrington*, 483 S.W.3d at 522.

In order to ensure fundamental fairness in termination proceedings, Tennessee law imposes a heightened standard of proof—clear-and-convincing evidence—for the parent's benefit. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington*, 483 S.W.3d at 522. The clear-and-convincing-evidence standard ensures that the facts supporting the statutory grounds for parental rights termination are highly probable before the State terminates a parent's fundamental right. *In re Carrington*, 483 S.W.3d at 522. Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

The heightened burden of proof applies to both the initial determination of whether statutory grounds for termination have been established and whether termination is in the best interest of the child. *Id*. First, the petitioner must establish, by clear-and-convincing evidence, at least one of the statutory grounds for termination of the parent's rights. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010). Second, the petitioner must prove, by clear-and-convincing evidence, that termination of the parent's rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Carrington*, 483 S.W.3d at 523 ("The best interests analysis is separate from and subsequent to the determination that there is clear-and-convincing evidence of grounds for termination.") "These requirements ensure that each parent receives the constitutionally required 'individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away.'" *See In re Carrington*, 483 S.W.3d at 523 (quoting *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999)).

- 4 -

In light of the heightened standard of proof, an appellate court must modify the customary standard of review mandated by Tennessee Rule of Appellate Procedure 13(d) when reviewing a trial court's findings in termination proceedings. *Id.* at 523; *In re Angela*, 303 S.W.3d at 246. First, we review the trial court's specific factual findings *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d); *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). We will not disturb the trial court's findings unless the evidence in the record preponderates otherwise. Tenn. R. App. P. 13(d). However, in termination proceedings, a reviewing court must then make its own determination as to whether clear-and-convincing evidence supports termination. *In re Taylor B.W.*, 397 S.W.3d at 112. Whether the facts are sufficient to support termination of parental rights is a conclusion of law, which this Court reviews *de novo* with no presumption of correctness. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *In re Valentine*, 79 S.W.3d 539, 548 (Tenn. 2002)).

## DISCUSSION

## I. GROUNDS FOR TERMINATION OF FATHER'S PARENTAL RIGHTS

The trial court found that Appellees had offered clear-and-convincing proof of four grounds supporting termination of Father's parental rights: (1) incarceration with a child under age eight and a sentence over ten years; (2) incarceration at the time of the institution of the termination proceedings when the parent has engaged in conduct prior to incarceration exhibiting a wanton disregard for the welfare of the child; (3) abandonment by failure to establish a suitable home; and (4) persistence of conditions. Although the Supreme Court has instructed this Court to consider the sufficiency of the trial court's findings as to each of the grounds for termination of Father's rights, as long as one statutory ground for termination is established by the facts in the case and termination is in the child's best interest, the trial court's decision will be sufficiently supported. *In re Carrington*, 483 S.W.3d at 525–26. We now turn to review the trial court's findings as to each ground relied upon by the trial court for termination.

### 1. Incarceration with a Sentence Over Ten Years and a Child Under Age Eight: Tennessee Code Annotated Section 36-1-113(g)(6).

Tennessee Code Annotated Section 36-1-113(g)(6) provides the following as a ground for termination of parental rights:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight years of age at the time the sentence is entered by the court.

Aunt and Uncle bore the burden to establish, by clear-and-convincing evidence, that Father was convicted of a crime and sentenced to a prison term of ten or more years, and Brianna B. was under the age of eight at the time the sentence was entered by the court. Tenn. Code Ann. § 36-1-113(g)(6). Father testified that he is currently serving an eleven-year prison sentence and that he received the sentence when Brianna B. was approximately twenty-months old. Moreover, the record contains Father's criminal convictions, which clearly indicate that he has been sentenced to a prison term over ten years. Accordingly, we conclude that the record contains clear-and-convincing evidence to support the trial court's finding that this ground for termination of Father's parental rights has been established.

## 2. Abandonment by Incarceration: Tennessee Code Annotated Section 36-1-102(1)(A)(iv).

Tennessee Code Annotated Section 36-1-102(1)(A) provides, in relevant portion:

For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

. . .

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

The trial judge held that Father abandoned Brianna B. by incarceration, as described in Tennessee Code Annotated Section 36-1-102(1)(A)(iv). Although Father does not dispute this ground, we are obligated to review it on appeal based on the Tennessee Supreme Court's directive. *In re Carrington H.*, 483 S.W.3d 523–25. The record clearly indicates that Father was incarcerated when the petition to terminate his parental rights was filed in February 2017. However, before a court may terminate a parent's parental rights on this ground, the party seeking termination must also establish that the parent has willfully failed to visit the child, support the child, or has engaged in conduct prior to the parent's incarceration that exhibits a wanton disregard for the welfare of the child. Tenn. Code Ann. § 36-1-102(1)(A). The trial court's order summarily states

that Father is guilty of these grounds without further elaboration or specific factual findings in support of its conclusion. We are, therefore, unable to evaluate from this record whether clear-and-convincing evidence supports the trial court's conclusion based upon the lack of specific factual findings in its order. Accordingly, we reverse the trial court's decision as to this ground.

### 3. Abandonment by Failure to Establish a Suitable Home: Tennessee Code Annotated Section 36-1-102(1)(A)(ii).

The trial court found that Father had abandoned the child by willfully failing to provide a suitable home under the conditions described in Tennessee Code Annotated Section 36-1-102(1)(A). Tennessee Code Annotated Section 36-1-102(1)(A) provides, in relevant portion:

> For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> . . .
>
> (ii) The child has been removed from the home of the parent or parents or the guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, **and the child was placed in the custody of the department or a licensed child-placing agency**, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent or parents or the guardian or guardians to establish a suitable home for the child, but that the parent or parents or the guardian or guardians have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department.

Father also does not dispute this ground, but we are obligated to review it on appeal based on the Tennessee Supreme Court's directive. *In re Carrington H.*, 483 S.W.3d 523–25. Among other elements, Tennessee Code Annotated Section 36-1-102(1)(A) clearly requires that the petitioner establish that a child has been placed in the custody of the Department of Children's Services ("DCS") before a parent's rights may be terminated based upon this ground. *See, e.g.*, *In re Navada N.*, 498 S.W.3d 579, 596 (Tenn. Ct. App. 2016). The petitioner must also prove, *inter alia*, that DCS has made reasonable efforts to assist the parent in finding suitable housing. *Id.* The record contains no evidence that Brianna B. was ever placed in DCS's custody. *Id.* Father gave physical custody of the child to Grandfather after the accident, which custody was later confirmed by the trial court. Grandfather then gave physical custody to the child's Aunt and Uncle, which custody again was also later confirmed by the trial court. Because there is not clear-and-convincing proof to support termination of Father's rights based upon abandonment by failure to provide a suitable home, we reverse as to this ground.

### 4. Persistence of Conditions: Tennessee Code Annotated Section 36-1-113(g)(3).

Parental rights may be terminated for persistence of conditions when:
(g)(3) [t]he child has been removed from the home of the parent ... by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent ... still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent ... in the near future; and

(C) The continuation of the parent ... and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36–1–113(g)(3). "The purpose behind the persistence of conditions ground for terminating parental rights is to prevent the child's lingering in the uncertain status of foster care if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *See In re Mickia J.*, No. E2016-00046-COA-R3-PT, 2016 WL 5210794, at *4 (Tenn. Ct. App. Sept. 19, 2016) (internal citation and quotation marks omitted). "As a threshold requirement for the applicability of the ground of persistence of conditions in termination of parental rights cases, the child must not only have been adjudicated dependent and neglected, but he or she must also

- 8 -

have been removed from the defendant parent's home." *In re Damien G.M.*, No. E2016-02063-COA-R3-PT, 2017 WL 1733867, at *3 (Tenn. Ct. App. May 3, 2017).

The trial court held that Aunt and Uncle had established this ground by clear-and-convincing evidence. Again, Father does not dispute this ground, but we are obligated to review it on appeal based on the Tennessee Supreme Court's directive. *In re Carrington H.*, 483 S.W.3d 523–25. From the record, it is clear that the child was not, in fact, living in Father's home at the time custody was legally awarded to Grandmother and Grandfather. Father testified that he voluntarily gave physical custody to Grandmother and Grandfather because Father was seriously injured and unable to care for the child. Uncle also testified that the child was sent to live with Grandfather and Grandmother immediately after the accident. The record indicates that sometime in June of 2015, Grandfather and his wife successfully sought legal custody of the child. However, the record contains no order related to these proceedings, and the testimony indicated that Brianna B. was already living with Grandfather and Grandmother when they sought legal custody. The appellate record transmitted to us also lacks the August 2016 order that allegedly adjudicated the child dependent and neglected. We emphasize that our jurisdiction is appellate only, and our review is limited to the record transmitted to this Court. In the absence of the June 2015 or August 2016 orders, this Court cannot engage in its reviewing function. Accordingly, we reverse as to the ground of persistence of conditions.

However, having concluded that Aunt and Uncle established, by clear-and-convincing evidence, at least one of the statutory grounds for termination of Father's parental rights, the court now turns to evaluate whether the record supports the trial court's finding that termination of Father's parental rights is in the child's best interest.

## II. BEST INTEREST OF THE CHILD

When at least one of the statutory grounds for termination of parental rights has been established, the petitioner must then prove, by clear-and-convincing evidence that termination of the parent's rights is in the child's best interest. *In re Navada N.*, 498 S.W.3d at 606 (citing *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994)). Not all parental misconduct is irredeemable. *See In re Miracle M.*, No. W2017-00068-COA-R3-PT, 2017 WL 3836020, at *8 (Tenn. Ct. App. Aug. 30, 2017). Accordingly, the statutes governing the termination of parental rights recognize that termination may not always serve the child's best interest. *Id*. However, when the interests of the parent and the child conflict, the courts must always resolve the conflict in favor of the rights and best interest of the child. *Id*. Tennessee law provides that a court may consider the following factors when determining whether termination of parental rights is in the child's best interest:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to affect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent and guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional, or psychological abuse, or neglect toward the child, or another child or assault in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). The factors enumerated above are not exhaustive, and "[t]he statute does not require every factor to appear before a court can find that termination is in a child's best interest." *Dep't of Children's Svcs. v. T.S.W.*, No.M2001-01735-COA-R3-PT, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002). In some cases, the consideration of a single factor, or facts outside the statutory factors, may dictate the outcome of the court's analysis. *See In re Miracle*, 2017 WL 3836020, at * 8.

Here the trial court made the following best interest findings:

1. [Father] has failed to make such an adjustment of circumstance, conduct or conditions as to make it safe and in the child's best interest to be in his home;

2. A meaningful relationship has not been established between Father and the subject minor child;

3. A change in caretakers and physical environment would likely have a traumatic effect on the child's emotional, psychological, and/or medical condition;

4. The child resides with a family who is willing to adopt the child.

Father argues that the trial court erred in concluding that termination of his parental rights is in Brianna B.'s best interest. Father concedes, "[w]hile no authority can be cited to support the appellant's position and all authority is in opposition, . . . [he] submits the trial court erred in concluding that the subject minor child would be better off if she never had any relationship with her father, and that the father has no other obligation to the child."

The trial court heard testimony from Aunt, Uncle, Father, and Grandfather. Father testified that he had been unable to care for the child because of the injuries he sustained in the accident, followed by his incarceration. However, he testified that he loved the child and participated in raising her for the first seven months of her life before the accident. Father acknowledged that he could be compelled to serve the entirety of his eleven year sentence, but testified that he expected to be released much earlier. Father also testified that he would eventually be able to find suitable housing for his daughter, although not immediately upon his release from prison. Father testified that he would no longer abuse drugs or alcohol if he is released from jail and awarded custody of the child. He testified that he has been diagnosed with bi-polar disorder, but he does not believe this will impair his ability to care for the child. Father was asked to explain why he posted a series of threatening videos directed towards Mother's family on Facebook after the accident. Father testified that he made the video threatening Mother's relatives in an attempt to provoke Grandfather into returning his calls. Specifically, Father explained, "I stated for the Court earlier that the reason why I'd made those videos in the first place, in the back of my mind, I was thinking that if it made him mad, he would call me up and he'd chew me out, he'd do something. We would at least be talking then." Father testified that he did not remember the exact words he used in the videos because he was intoxicated.

- 11 -

Aunt and Uncle testified that Brianna B. has been thriving in their custody, and the couple plans to adopt Brianna B. as soon as possible. Uncle testified that the child is in pre-school, and that she loves her teacher and has made several close friends who greet her at drop-off every morning. He also testified that the child is supported by a wide net of extended family who have grown close to the child since she has been residing with her Aunt and Uncle in Florida. The testimony and exhibits offered by Aunt and Uncle indicate that the child is well taken care of, and she has her own room and many toys. Both Aunt and Uncle also testified that they each are employed and are able to financially support the child (as they have been for over a year). Aunt testified that Brianna B. believes Aunt and Uncle are her parents—and that the child has no memory of Father, whatsoever. She testified that she believed it would be very hard on the child emotionally to ever have visitation from Father—even if Father improved his behavior after completing the term of his prison sentence. Aunt, Uncle, and Grandfather testified that they believe the child would be harmed psychologically and physically if returned to Father's custody.

From the record and the totality of the circumstances, we conclude that there is clear-and-convincing evidence to support the trial court's findings that termination of Father's parental rights is in Brianna B.'s best interest.

## CONCLUSION

For the forgoing reasons, we reverse the trial court's termination of Father's parental rights on the grounds of abandonment by incarceration, abandonment by failure to establish a suitable home, and persistence of conditions. We affirm the trial court's termination of Father's parental rights on the ground of abandonment by incarceration with a sentence over ten years, and its determination that termination of Father's parental rights is in Brianna B.'s best interest. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Shane B. Because Shane B. is proceeding in forma pauperis in this appeal, execution for costs may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE