FILED
02/24/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2021

IN RE KENNETH D.

**Appeal from the Chancery Court for Warren County**
**No. 707-A    Larry B. Stanley, Jr., Judge**

_____

**No. M2021-00214-COA-R3-PT**

_____

A father appeals the termination of his parental rights to his child.  Because the trial court's order lacks sufficient factual findings and legal conclusions, we vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Daniel L. Graves II, Murfreesboro, Tennessee, for the appellant, Kenneth D.

Nathan S. Luna, Murfreesboro, Tennessee, for the appellees, Angeline S. and David S.

**OPINION**

**I.**

**A.**

In 2015, Angeline S. ("Mother") and Kenneth D. ("Father") divorced, three years after the birth of their son, Kenneth.  As part of their divorce, the court approved a permanent parenting plan naming Mother as the primary residential parent but granting Father 160 days of parenting time.  That plan proved to be short lived.

The following year, upon the petition of the Tennessee Department of Children's Services, a juvenile court found Kenneth to be dependent and neglected.  Specifically, the

court found the child to be the victim of severe child abuse at the hands of Father. The severe abuse involved the discharge of a handgun. Mother retained custody of the child, but the court restrained Father from having any contact with the child other than therapeutic visitation. In February 2017, the juvenile court terminated Father's visitation altogether.

In the meantime, Mother married David S. ("Stepfather"). In April 2019, Stepfather, joined by Mother, petitioned to terminate Father's parental rights and to adopt Kenneth. The petition alleged six grounds for termination: abandonment by failure to visit; abandonment by failure to support; persistence of conditions; severe child abuse; mental incompetency and inability to care for the child; and failure to manifest an ability and willingness to assume custody and financial responsibility of the child.

At the trial on the petition, Mother, Father, Father's half-sister, and the child's paternal grandmother testified. Mother testified that Father had not visited his child since Father's visitation was terminated in February 2017. Mother was aware that Father had tried "to pursue some form of custody in November of 2018." And the parties stipulated that Father had petitioned another court to modify the parenting plan in November 2018. But the court where Father filed the petition determined that it did not have jurisdiction.

Mother also testified that she never received any child support from Father. On cross-examination, she acknowledged that, at the time of the divorce, she agreed with Father that neither would pay child support. And when Father's visitation was terminated in November 2017, Mother declined to pursue child support. As far as she was concerned, she did not want "anything to do with any of that," and she "was very capable of taking care of [her] son." Beyond being capable of supporting the child on her own, Mother wanted no assistance from Father. Mother was aware that her son might be entitled to federal benefits through Father, but she "never pursued it, because, once again, . . . [she] didn't need any extra help financially taking care of [her] son."

Mother described Father as irresponsible, unpredictable, and violent. He had abused drugs, specifically opioids. And Mother feared for her safety when she lived with Father. She recalled an argument that turned violent. After Mother confronted Father over money that was missing from her bank account, Father kicked Mother in the head, dragged her off by her hair, pushed her up against the wall, and choked her in the presence of the child.

But Mother conceded she had not seen Father in several years. Father had been restrained from contacting her. And Mother had made efforts to avoid contact by changing her phone number and keeping her personal information private.

Mother was asked if her position regarding termination of rights would change if she learned that Father had made significant changes in his life. She testified that she did not know if she would ever feel safe around Father or that she would ever be comfortable co-parenting with him. Mother explained that she was concerned with Father's drug use

2

and whether or not he was receiving treatment. In her opinion, Father was erratic, had poor impulse control, and was violent.

In his testimony, Father acknowledged that he had not seen his child since 2016. There had been no relationship at all for about four years. Father explained that he was afraid that any attempt he made to contact his child would jeopardize what contact his half-sister and his mother enjoyed. Mother testified that she allowed Father's half-sister to have overnight, weekend visits "[e]very other week or so" from 2017 until November 2019. But Mother conditioned the visits on Father not being informed of the timing of the visit and on there being no contact with Father while the child was present.

As for support, Father was prepared to support his child. Before his marriage to Mother, Father had served with the United States Marine Corps. He had a 100% service-connected disability rating for which he received Department of Veterans Affairs benefits. He also received Social Security disability benefits. Father stated that he had provided information to both the VA and Social Security so that his child could receive benefits and was "confounded" as to why the child was not.

Father lived in Florida, where he shared a home with another veteran he had met through the VA. In discussing his time in Tennessee, Father confessed that he had "built a terrible drug habit" and was "just terribly self-destructive." He had "lost the will to live." When asked about past incidents of domestic violence, he apologized and said he "was not in [his] right mind." Father had been diagnosed with post-traumatic stress disorder, traumatic brain injury, depression, bipolar disorder, and anxiety.

To escape the "depression, drugs, and the same old crowd that [he] ha[d] known all of [his] life," Father moved to Florida in 2017. He said "[e]verything seemed to get a little lighter" with the move. And he claimed to have been off pain medication of any sort since November 2019. But Father had been prescribed medical marijuana.[1] When asked if he smoked marijuana daily, Father responded, "Hell, yeah."

Father's half-sister testified to Father's improvement since moving to Florida. She described him as being "a completely different person." Father was "taking care of himself, diet, exercise," and his cleanliness and overall appearance were "just upstanding." He also had his finances in order. She felt like this was "the best time ever for him to have his visitation reinstated." Father's mother, who lived for a time with Father in Florida, believed that the treatment Father had received through the VA had been helpful. When asked to describe the changes to Father since his move to Florida, Father's Mother testified, "Everything ha[d] changed for the good." It was "like night and day to the good part."

---

[1] Under conditions specified in the Florida Constitution, "medical use of marijuana by a qualifying patient . . . is not subject to criminal or civil liability or sanctions under Florida law." FLA. CONST. art. X, § 29(a)(1).

3

B.

Following the trial, the court entered an order terminating Father's parental rights and granting the request for adoption. The order included ten factual findings detailed under the heading "Findings of Fact." The findings were:

1. The child . . . was born to the marriage of [Mother] and [Father].
2. The Putative Father Registry was consulted ten (10) days prior to the filing of the Petition for Termination.
3. There are no other persons or part[ies] to this proceeding who ha[ve] legal or physical custody of [the child].
4. [Father] willfully failed to support [Mother] for four months immediately preceding the filing of the petition.
5. [Father] failed to exercise any parenting time with the child within four (4) months of the filing of the Petition for Termination.
6. [Father] failed to provide any financial support for the child for four (4) months prior to the filing of the Petition to Terminate. Therefore, [Father] abandoned the child during the appropriate period to measure for abandonment in [sic] during this time.
7. [Father] failed to provide a stable and suitable home for the child. No suitable home is available from [Father] and [this is] unlikely to be remedied. He stated he lives in Florida with a man he met through the Veteran's Administration. [Father] is disabled, has a history of alcohol use and violence. His last visit with the minor child was in April of 2016.
8. All other allegations in the Petition to Terminate are accurate.
9. The child would be at a substantial risk of harm if returned to [Father].
10. It is in the child's best interest to terminate the rights of [Father]. Full custody, control and guardianship of the child should be awarded to [Mother] and [Stepfather] and the child shall be able to be adopted by the [Stepfather].[2]

The next section of the order, under the heading "Conclusions of Law," related solely to the best interest determination. The section referenced eight of the nine best interest factors found at Tennessee Code Annotated § 36-1-113(i)(1)-(9). Under each factor, the court provided a brief analysis:

**Whether the father has made adjustments of circumstances, conduct, or conditions as to make it safe and the children's best interest to be in the home of father.**

---

[2] Although the parties submitted written stipulations, the court's order does not reference them.

The Court has examined the adjustments of [Father's] living [arrangements] and the stability of his life and finds that the child is more stable with [Mother] and [Stepfather].

**Whether the father has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonabl[y] appear possible.**

The child was removed from [Father's] custody by a Petition for Dependency and Neglect filed in the Juvenile Court of Warren County. [Father] was given therapeutic visits, but stated he went to Kymari House to set visits but w[as] told he would need a court order[;] he did not follow through with his visits.

**Whether the father has maintained regular visitation with the child.**

The Court finds [Father] has not visited the child since April of 2016.

**Whether a meaningful relationship with the child has been established in other ways.**

The Court find[s] it has not.

**Whether the parents have shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child.**

The Juvenile Court of Warren County found [Father] had committed severe child abuse.

**Whether the physical environment of the father's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parents consistently unable to care for the children in a safe or stable manner.**

The Court finds [Father] lives in Florida with a man he met at the Veteran's Administration. He is disabled, has a history of drug use and violence.

**Whether the parent's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively [providing] safe and stable care and supervision for the child.**

5

[Father] stated he has Post Traumatic Stress Syndrome and is a 100% disabled Marine veteran. He has erratic behavior and outbursts. During this court proceeding he spoke out to [Mother] stating, "You've got one shot, make it good."

**Whether the father has paid child support consistent with the child support guidelines promulgated by the department pursuant to T.C.A. § 36-5-101.**

The Court finds he has not.

Father moved for a new trial or, in the alternative, to alter or amend the order.[3] Among other grounds, Father contended that the order did not contain sufficient findings of fact and conclusions of law as required by the parental termination statute. *See* Tenn. Code Ann. § 36-1-113(k) (2021). The court denied Father's motion.

## II.

Tennessee Code Annotated § 36-1-113 sets forth both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). Parties seeking termination of parental rights must first prove at least one statutory ground for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1). If one or more statutory grounds for termination are shown, they then must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

---

[3] Father made an earlier motion for relief from the order because his counsel did not receive it. The order did not include a certificate that a copy of the order had been served on all parties or counsel signed by the clerk. *See* TENN. R. CIV. P. 58. The court granted Father's motion, set aside its order, and reentered the order on October 27, 2020.

We review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); TENN. R. APP. P. 13(d). We then "make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

A.

On appeal, Father raises three issues. Two of the issues relate to the court's conclusion that termination of Father's parental rights was in the child's best interest. The third issue is "[w]hether the Trial Court's findings of fact and conclusions of law were specific and sufficient to terminate [Father's] parental rights." Father contends that the factual findings and conclusions of law were insufficient, making appellate review impossible.

The parental termination statute requires "an order that makes specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k). Factual findings both "facilitate appellate review" and safeguard the important rights at stake in a termination proceeding. *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010). As our supreme court has observed, this Court "routinely remand[s] contested termination cases to the trial court for failure to make findings of fact and/or conclusions of law, whether related to the grounds for termination or the child's best interests." *Id.*

In response to the contention that the order terminating parental rights lacks sufficient findings and conclusions, Stepfather and Mother offer a two sentence rejoinder:

> In this case, the Trial Court made several findings of fact to support the conclusion that grounds for termination exist, and termination is in the best interest of the child. Although [Father] disagrees with the Trial Court's findings of fact, implicit credibility determinations made by the Trial Court are left undisturbed absent clear and convincing evidence to the contrary.

While we agree that adverse credibility determinations are implicit in the court's ultimate decision to terminate Father's parental rights, the "several findings of fact" fall short of what is required for appellate review. In its analysis of the grounds for termination, the court does not cite to any provisions of the parental termination statute. So we are left to guess which and how many grounds for termination were proven by clear and convincing evidence.

7

Three of the grounds the court relied upon appear to be "[a]bandonment by the parent." Tenn. Code Ann. § 36-1-113(g)(1). Abandonment as a ground for termination is defined in multiple ways. *See id.* § 36-1-102(1)(A) (Supp. 2019). The court's finding that "[Father] willfully failed to support [Mother] for four months immediately preceding the filing of the petition[,]" matches most closely the definition of abandonment found at Tennessee Code Annotated § 36-1-102(1)(A)(iii), which applies when a father has failed to visit or support "the child's mother during the four (4) months immediately preceding the birth of the child." But Stepfather and Mother did not allege this type of abandonment in the petition to terminate. And there was no proof regarding Father's support of Mother prior to the birth of their child.

The petition to terminate did allege abandonment by failure to visit and failure to support the child. At the time the petition was filed, abandonment included the failure "to visit or . . . to support or . . . to make reasonable payments toward the support of the child" during the four months immediately preceding the filing of the petition to terminate parental rights. *Id.* § 36-1-102(1)(A)(i). And the court did find that Father failed to visit the child and failed to support the child.

In connection with the failure to support, the court referenced willfulness in its factual findings. Lack of willfulness is an affirmative defense to the ground of abandonment by the parent. *Id.* § 36-1-102(1)(I). But Father did not raise this defense in his answer to the petition to terminate. By addressing willfulness at all, we assume this defense was tried by implied consent. *See In re Alysia S.*, 460 S.W.3d 536, 564 (Tenn. Ct. App. 2014) (noting that even grounds for terminating parental rights can be tried by implied consent). Yet the order does not address the offered evidence potentially showing a lack of willfulness in Father's failure to support. The divorce decree provided that neither party would owe child support, and Mother was steadfast in her opposition to receiving child support from Father.

The court also stated that Father "failed to provide a stable and suitable home for the child." We assume that this finding was intended to support termination under Tennessee Code Annotated § 36-1-113(g)(3), a ground commonly referred to as "persistence of conditions." *See In re Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005). Persistence of conditions focuses "on the results of the parent's efforts at improvement rather than the mere fact that he or she had made them." *Id.* at 874. So the question before the court is "the likelihood that the child can be safely returned to the custody of the [parent], not whether the child can safely remain in foster care." *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

There are several elements to the ground of persistence of conditions. Persistence of conditions may be a basis to terminate parental rights when:

8

The child has been removed from the home or the physical or legal custody of a parent . . . for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent . . . , or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent . . . ;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and

(iii) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(A). Each of the statutory elements must be established by clear and convincing evidence. *In re Valentine*, 79 S.W.3d at 550.

The trial court's findings for this ground, in their entirety, were:

[Father] failed to provide a stable and suitable home for the child. No suitable home is available from [Father] and [this is] unlikely to be remedied. He stated he lives in Florida with a man he met through the Veteran's Administration. [Father] is disabled, has a history of alcohol use and violence. His last visit with the minor child was in April of 2016.

The court failed to address every element of the ground of persistence of conditions. So we cannot determine whether the court relied on this ground as a basis for terminating Father's parental rights.

The court concluded that "[t]he child would be at substantial risk of harm if returned to [Father]." We assume that the court was referencing the ground found at Tennessee Code Annotated § 36-1-113(g)(14). Under this ground, a parent's rights may be terminated if he or she

[1] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and [2] placing the child in the person's legal and physical custody

9

would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). Both prongs must be established by clear and convincing evidence. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). As to the first prong, the petitioner may prove that a parent is either unable or unwilling to "assume legal and physical custody or financial responsibility of the child." *Id.* at 677. While the court made a cursory finding that the child would be at substantial risk of harm, it failed to make any findings regarding Father's ability or willingness to assume custody or financial responsibility of his child.

Two grounds alleged in the petition were not addressed by the court as a basis for terminating Father's parental rights. The ground of severe abuse was only addressed in the court's best interest analysis. *See* Tenn. Code Ann. § 36-1-113(g)(4). Mental health issues were also addressed in the best interest analysis, and the court found Father's behavior in the courtroom "erratic." But the ground of mental incompetency and inability to care for the child was not mentioned at all. *See id.* § 36-1-113(g)(8)(B). Although the court found "[a]ll other allegations in the Petition to Terminate are accurate," that does not satisfy the court's obligation to make specific findings of fact and conclusions of law. *See id.* § 36-1-113(k).

B.

Because "[n]ot all parental misconduct is irredeemable," our parental termination "statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). So even if a statutory ground for termination is established by clear and convincing evidence, a court must also determine whether termination of parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2). The best interest analysis is a fact-intensive inquiry, and each case is unique. *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). When the petition to terminate was filed, the best interest analysis focused on nine statutory factors. *See* Tenn. Code Ann. § 36-1-113(i) (Supp. 2019).

Our ability to review the court's best interest determination is again hindered by a lack of factual findings. By way of example, the first statutory factor focuses on whether the parent "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the [parent's] home." *Id.* § 36-1-113(i)(1). In addressing this factor, the court found that the child would be "more stable" with Stepfather and Mother. Although the court "examined the adjustments of the father's living [arrangements] and the stability of his life," the court did not make a finding regarding whether the child could be safe in Father's home.

The second statutory factor considers the parent's potential for lasting change. *See id.* § 36-1-113(i)(2) (asking "[w]hether the parent . . . has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible"). Despite the second statutory factor's focus, the court's findings relate only to Father's lack of effort at visiting his child after the finding of severe abuse in 2016.

The relevancy and weight given the statutory factors can vary, and "the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878. But given that a remand is necessary to determine the ground or grounds for terminating Father's parental rights, the court should also make further findings in connection with its best interest analysis by addressing the statutory factors.

## III.

Because of a lack of specific findings of fact and conclusions of law, we vacate the judgment terminating Father's parental rights. The case is remanded for specific findings of fact and conclusions of law as required by Tennessee Code Annotated § 36-1-113(k) and such other proceedings as are necessary and consistent with this opinion. In light of the requirements of Tennessee Code Annotated § 36-1-124(a) (2021), the trial court is directed to expedite the case on remand.

                              ____s/ W. Neal McBrayer_____
                              W. NEAL MCBRAYER, JUDGE