IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 3, 2025

**IN RE AVA M. ET AL.**[1]

**Appeal from the Juvenile Court for Jackson County**
**No. 2023-JV-15     Tiffany Gentry Gipson, Judge**

_____

**No. M2024-01894-COA-R3-PT**

_____

A mother appeals the juvenile court's termination of her parental rights to two of her children. The trial court terminated the mother's parental rights on the findings that the petitioner, Tennessee Department of Children's Services, had proven the ground of severe abuse and that it was in the best interests of the children that the mother's parental rights be terminated. The mother appeals, contending that the finding that termination was in the best interests of the children was not supported by clear and convincing evidence. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and KRISTI M. DAVIS, JJ., joined.

Kayla Collins Cantrell, Gainesboro, Tennessee, for the appellant, McKayla C. M.

Jonathan Skrmetti, Attorney General and Reporter, and Allen T. Martin, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

_____

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

# OPINION

## FACTS AND PROCEDURAL HISTORY

Ava M., born in June 2020, and Mitchell B., born in April 2022, are the children[2] ("the Children") of McKayla M. ("Mother"). On March 4, 2022, the Department of Children's Services ("DCS") received a referral alleging that Ava was exposed to drugs and domestic violence by Mother and her paramour, Jackson B.[3] One month later, on April 4, 2022, and before DCS could complete its home study and investigation of the first referral, DCS received a second referral alleging that Mitchell was born with drug exposure. On April 5, 2022, DCS interviewed hospital staff and learned that Mother tested positive for buprenorphine[4] and THC upon admission, and Mitchell was diagnosed with Neonatal Abstinence Syndrome.[5] Mitchell's cord test returned positive for amphetamines, methamphetamine, and THC. Based on these and other facts set forth in an emergency petition filed by DCS,[6] the juvenile court issued a Protective Custody Order placing the Children in DCS custody on April 7, 2022, where they have remained. The following day, DCS filed a dependency and neglect petition against Mother.

Once in DCS custody, a hair follicle drug screen was conducted on Ava that returned positive for amphetamines, methamphetamine, and buprenorphine. Mother's hair follicle drug screen returned the same results.

On February 7, 2023, the juvenile court adjudicated the Children as dependent and neglected based in part on the finding that Mother had committed severe child abuse of the Children as defined by Tennessee Code Annotated § 37-1-102(b)(27). Significantly, no appeal was taken from this judgment.

---

[2] Mother has a third child, Carolina, who was also removed from her custody for drug exposure after Ava and Mitchell were removed. However, Mother's parental rights to Carolina are not at issue in this case.

[3] The Children were born while Mother and Jason P. were married. Jason P. is not the biological father, but as the legal father, he has signed a denial of paternity and is not a party to this appeal. Jackson B., the biological father, surrendered his parental rights to Ava and Mitchell on May 6, 2024, and is not a party to this appeal.

[4] Buprenorphine is a drug used to treat opioid abuse.

[5] Neonatal Abstinence Syndrome is a condition in which a newborn baby is withdrawing from prenatal drug exposure.

[6] The emergency petition/order was titled "Attachment Pro Corpus, Protective Custody Order Immediately Placing Children in the Protective Custody of the Department of Children's Services."

While the Children were in DCS custody, DCS developed three permanency plans with Mother. As part of these plans, Mother's responsibilities included that she complete an alcohol and drug assessment and follow its recommendations; maintain sobriety for a minimum of six consecutive months; complete parenting classes, a psychological evaluation, and domestic violence and anger management classes; obtain and maintain suitable housing and provide proof of paid rent and utility bills; obtain and maintain a legal source of income, reliable transportation, and a driver's license; pass drug screens; resolve all criminal charges and not incur new charges; visit the children; and pay child support.

DCS filed a petition for termination on April 12, 2023, alleging that Mother had committed severe child abuse, as defined by Tennessee Code Annotated § 37-1-102(b)(27), which constituted grounds for termination pursuant to Tennessee Code Annotated § 36-1-113(g)(4). The hearing was held on June 24, 2024, and the court heard testimony from the DCS case worker, Tara Usrey; the paternal grandfather and foster father, Joseph B.; the program director at Clay County Sober Living, James Becker; and Mother. The court found all the state's witnesses to be credible. The court did not find Mother's testimony to be credible.

In its final order entered on November 18, 2024, the court found that the "ground of severe child abuse had been proven by clear and convincing evidence" and that terminating the parental rights of Mother was in the best interests of the Children. Thus, the juvenile court terminated the parental rights of Mother to Ava and Mitchell and awarded custody and guardianship to DCS.

Mother appeals.

## ISSUES

Mother's sole issue is whether the juvenile court's finding that termination of her parental rights was in the best interests of the Children and was supported by clear and convincing evidence.

DCS identifies two issues for our review:

1. Whether the trial court properly terminated Mother's parental rights on the ground of severe child abuse.
2. Whether the trial court properly determined that termination of Mother's parental rights was in the Children's best interest.

## STANDARD OF REVIEW

Both the United States and Tennessee constitutions provide parents with "a fundamental constitutional interest in the care and custody of their children." *In re Connor B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d

374, 378 (Tenn. 2002)). These parental rights, however, are not absolute and may be terminated if there is clear and convincing evidence to justify such termination under the applicable statute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016).

Our Supreme Court has explained,

> To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c) (Supp. 2022); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). When a trial court has made findings of fact, the appellate court reviews the findings de novo on the record with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). The appellate court next reviews the trial court's order de novo to determine whether the facts amount to clear and convincing evidence that one of the statutory grounds for termination exists, and if so, whether termination of parental rights is in the best interests of the child. *Id.*

*In re Bentley E.*, 703 S.W.3d 298, 301 (Tenn. 2024). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 521–24.

## ANALYSIS

### I.     GROUND – SEVERE ABUSE

To terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c)). Our statute providing the grounds for termination of parental rights describes the ground of severe child abuse as follows:

> The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child . . . .

- 4 -

Tenn. Code Ann. § 36-1-113(g)(4) (effective July 1, 2022).[7]

Tennessee Code Annotated § 37-1-102 (b)(27) provides the definition for "severe child abuse." It reads in pertinent part:

(A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;

.    .    .

(E) Knowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child; or

(F) Knowingly allowing a child to be within a structure where any of the following controlled substances are present and accessible to the child:

(i) Any Schedule I controlled substance listed in § 39-17-406;
(ii) Cocaine;
(iii) Methamphetamine; or
(iv) Fentanyl . . . .

Tenn. Code Ann. § 37-1-102(b)(27) (effective July 1, 2022).

With regard to the ground of severe abuse at issue here, the juvenile court explained its findings as follows:

Case Manager (CM) Tara Usrey testified, and the exhibits so reflect, that on February 7, 2023 [Mother] was found to be the perpetrator of severe child abuse against [the Children] by the Juvenile Court of Jackson County, Tennessee, and that both children were found to be the victims of severe child abuse, as defined by Tenn. Code Ann. § 37-1-102. The findings were based upon the prenatal drug use by [Mother] while pregnant with Mitchell . . . and because both children tested positive for illicit drugs at the time of removal from their parents. Mitchell['s] cord blood was positive for methamphetamine, amphetamines, and THC. Ava['s] hair follicle drug

---

[7] Throughout, we refer to and apply the version of the statute in effect on the date the petition was filed. *In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

screen, conducted April 8, 2022, was positive for methamphetamine, amphetamines, and buprenorphine. The order adjudicating the children to be dependent and neglected and the victims of severe abuse perpetrated by [Mother] was entered on February 7, 2023, and it was not appealed and is a final order.

Therefore, the Court finds that the ground of severe child abuse has been proven by clear and convincing evidence, found at Tenn. Code Ann. § 36-1-113(g)(4).

The record before us clearly proves that Mother was "found to have committed severe child abuse, as defined in § 37-1-102, under [a] prior order of a court," Tenn. Code Ann. § 36-1-113(g)(4). Further, it is undisputed that that order was not appealed. Thus, we affirm the juvenile court's finding that the ground of severe child abuse has been established by clear and convincing evidence.

## II. BEST INTEREST FACTORS

Once a court has found there to be clear and convincing evidence of one or more grounds for termination, "the interests of parent and child diverge." *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). "While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005) (citation omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether it amounts to clear and convincing evidence that termination is in the child's best interests. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

In determining whether termination of parental rights is in a child's best interest, courts must consider the non-exhaustive list of statutory factors in Tennessee Code Annotated § 36-1-113(i)(1). *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). These statutory factors are not exclusive, and courts are free to consider any other proof offered at a termination proceeding that is relevant to the best interest analysis. *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (citations omitted).

While Mother argued that every best interest factor weighed against termination, the juvenile court made extensive findings regarding these best interest factors and other factors, ultimately concluding that termination of Mother's parental rights was in the best interests of the Children. We will review each of those factors and findings in turn.

Factor (A) under Tennessee Code Annotated § 36-1-113(i)(1) addresses the effect termination "will have on the child's critical need for stability and continuity of placement throughout the child's minority[.]" Tenn. Code Ann. § 36-1-113(i)(1)(A). The juvenile court found:

> termination of parental rights will have a positive impact on the Children's critical need for stability and continuity of placement through the children's minority. Ms. Usrey testified the children are in the same pre-adoptive home they have been in since entering foster care in April 2022. The foster parents, Mr. and Mrs. B[.], are the parents of the children's biological father, Jackson B[.], and have served in the parental roles for all of Mitchell's life and over half of Ava's life.
>
> .   .   .
>
> The [foster parents] have made sure all the children's medical appointments have been consistently met, counseling and therapy appointments are adhered to, and their physical and emotional needs are satisfied. The children are thriving in the [foster parents'] care.
>
> Mr. B[.] testified he and his wife greatly desire to adopt the children and be their forever parents.

After a thorough review of the record, we find the evidence preponderates in favor of the juvenile court's finding.

The second factor concerns "[t]he effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition[.]" Tenn. Code Ann. § 36-1-113(i)(1)(B). The juvenile court found, in part:

> a change in caregiver and physical environment is likely to have a negative impact on the children's emotional, physiological, and/or medical condition; Ms. Usrey testified how strongly the children are bonded to Mr. and Mrs. B[.], as well as how the children look to the [foster parents] to meet their needs. Mr. B[.] reinforced Ms. Usrey's testimony regarding the close bond they share with Ava and Mitchell.
>
> .   .   .
>
> [Mother], herself, candidly acknowledged to the court that she was not in a position to care for her children and could not state when she would be able to adequately provide for Ava and Mitchell. At this point, she is solely dependent on others for housing and services. She has failed to complete any

of the recommendations of her psychological assessment and has been negligent in maintaining contact with her Department case workers. She is simply unable to meet Ava and Mitchell's needs, with no plan as to how she might accomplish reunification in the future. Returning the children to [Mother] would be a detriment to the children and not in the children's best interests. [Mother] openly stated the [foster parents] have done a wonderful job caring for Ava and Mitchell.

The evidence in the record fully supports this finding.

Factor (C) concerns "[w]hether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs[.]" Tenn. Code Ann. § 36-1-113(i)(1)(C). The juvenile court found that Mother "has not," noting that both children tested positive for illegal drugs, as did a third child born to Mother after the Children's removal. The court also cited Mother's continued criminal activity and that she was currently "on furlough from the Putnam County Jail to the Clay County Sober Living Facility," a furlough that if violated, would result in serving the balance of her sentence. Finally, the trial court noted, Mother was aware of the steps of her permanency plans but "but did not successfully complete them. Had [Mother] successfully completed the requirements of the plans and demonstrated an ability to maintain compliance, stability and sobriety, the termination of parental rights proceeding would not have been necessary." The evidence in the record supports these findings.

Factor (D) addresses "[w]hether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment[.]" Tenn. Code Ann. § 36-1-113(i)(1)(D). The juvenile court found that "the children and [Mother] do not have a secure and healthy parental attachment, nor is there a reasonable expectation one can be created." While there was testimony that Ava had behavioral disturbances when Mother did not visit, suggesting a parental bond, there was also testimony from Mr. B., the foster father, that Mitchell doesn't "know any other mother" than the foster mother. The juvenile court further explained, in part:

[Mother] has failed to establish a relationship with the children, as evidenced by [Mother's] failure to successfully complete the steps on the permanency plans to regain custody. Permanency plans were ratified in August of 2022, December of 2022, and November of 2023, and as Ms. Usrey stated, [Mother] knew the path to reunification was successful compliance. However, she failed to even consistently visit, let alone satisfy the other plan requirements. At the time of hearing, Ms. Moore was still not receiving any unsupervised visits.

The evidence in the record supports this finding.

Factor (E) concerns "[w]hether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(E). While Mother contends that "a lack of visitation . . . has not been an issue," the juvenile court found:

> [Mother] has not been consistent in visiting Ava and Mitchell. [Mother] made herself unavailable for some of the visits through her criminal activity and repeated periods of incarceration. [Mother] frequently missed other visitation opportunities due to her driver's license being revoked and not having alternate means of transportation. [Mother] failed to maintain regular communication with her family services worker, who could have assisted her with arranging transportation. [Mother] failed to establish a consistent pattern of visitation or a positive bond despite the children being in custody for over two years. At the time of hearing, [Mother] still does not have any unsupervised visits with the children.

We also note that testimony from the foster father fully supports this finding, for when asked how many visits Mother had missed, he did not have an exact count but testified that "it's a considerable number." Based on our review of the record, we find the evidence supports these findings.

The trial court made no findings as to Factors (F) or (G), which consider, respectively, "[w]hether the child is fearful of living in the parent's home" and "[w]hether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms." Tenn. Code Ann. § 36-1-113(i)(1)(F)–(G). We agree that these are not relevant factors as Ava was taken from Mother's custody before she was two years old, and Mitchell never lived in Mother's custody.

Factor (H) considers "[w]hether the child has created a healthy parental attachment with another person or persons in the absence of the parent[.]" Tenn. Code Ann. § 36-1-113(i)(1)(H). The court found that "the children have created a healthy parental attachment with their foster parents in the absence of the parents" and that the Children "look to the foster parents to fulfill their everyday needs and provide physical and emotional stability." The evidence in the record fully supports this finding.

Factor (I) concerns "[w]hether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage[.]" Tenn. Code Ann. § 36-1-113(i)(1)(I). The juvenile court found:

[the Children] are bonded to not just their foster parents but with the entire extended foster family. . . . Ava and Mitchell's younger sister, who was born in 2023, was placed with the [foster parents] upon her removal from [Mother]. The children are emotionally tied to the church family they gained through placement with the foster home, as well as their daycare peers and teachers.

The evidence in the record fully supports this finding.

Factor (J) addresses "[w]hether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of . . . controlled substances . . . , which may render the parent unable to consistently care for the child in a safe and stable manner[.]" Tenn. Code Ann. § 36-1-113(i)(1)(J). The juvenile court found:

[Mother] has failed to demonstrate a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the children to be in the home of [Mother].

[Mother] tested positive for methamphetamine on a nail bed drug screen as recently as April 22, 2024. [Mother's] participation in the Clay County Sober Living Facility, which did not begin until the children had been in foster care for over two years, arose from the limited options of substance treatment versus extended incarceration. [Mother's] frequent and repeated involvement in illegal drugs and criminal activity make it unsafe for her to parent Ava and Mitchell.

.    .    .

[Mother] has also obtained criminal convictions in multiple counties since her children were removed from her care, and she currently faces serving several months if she does not maintain compliance with the Sober Living Facility.

The evidence in the record fully supports these findings.

Factor (K) considers "[w]hether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions[.]" Tenn. Code Ann. § 36-1-113(i)(1)(K). Here, the juvenile court found that Mother had failed to take advantage of such programs or resources, noting:

- 10 -

Ms. Usrey testified, and the proof showed, the Department scheduled multiple alcohol and drug assessments that [Mother] did not attend. [Mother] failed to remain in contact with the Department or the service providers who were attempting to work with her. The Department set-up domestic violence and anger management classes for [Mother], to no avail as [Mother] failed to attend the sessions. The proof showed it took [Mother] two years to complete parenting classes. A year after the children entered custody, [Mother] finally participated in a psychological evaluation, but she has still not complied with the recommendations from that evaluation. Ms. Usrey stated [Mother] refused to allow Ms. Usrey to perform home visits with her more than a couple of times. Ms. Usery would knock on [Mother's] door, then would be met with silence on the other side. [Mother] would not cooperate with conducting pill counts and has been resistant to drug screening.

The evidence supports these findings.

Factor (L) concerns "[w]hether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department[.]" Tenn. Code Ann. § 36-1-113(i)(1)(L). Based on a review of DCS's affidavit of reasonable efforts and other evidence in the record, the juvenile court determined that "the Department has made reasonable efforts to assist" Mother. We agree that the evidence preponderates in favor of this finding.

Factor (M) considers "[w]hether the parent has demonstrated a sense of urgency in . . . seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest[.]" Tenn. Code Ann. § 36-1-113(i)(1)(M). The juvenile court found, for many of the reasons given above, that Mother had failed to do so. The record supports this finding.

Factor (N) considers "[w]hether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult[.]" Tenn. Code Ann. § 36-1-113(i)(1)(N). The juvenile court found that the Children are "victims of severe child abuse perpetrated by their mother." The record clearly supports this finding.

Factor (O) considers "[w]hether the parent has ever provided safe and stable care for the child or any other child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(O). The court found that Mother "has failed to provide safe and stable care for the children or any other child." We agree.

For Factor (P), which concerns "[w]hether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive[.]" Tenn. Code

Ann. § 36-1-113(i)(1)(P), the court found that Mother has failed to do so. The court noted that, in addition to the above findings, "[o]ther than one child support payment, [Mother] has not provided financial support or otherwise materially assisted the foster family in providing for the daily needs of the children throughout the children's time in state custody." The record supports these findings.

Factor (Q) concerns "[w]hether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive." Tenn. Code Ann. § 36-1-113(i)(1)(Q). The juvenile court found, in part:

> As Ms. Usrey testified, [Mother] has not complied with the steps on the permanency plan in order to regain custody. Regarding a physical dwelling, Ms. Usrey was only allowed inside [Mother's] home a couple of times during the two years Ms. Usrey has been the case manager. At the time of this hearing, [Mother's] housing was dependent on the Sober Living Facility or the county jail, and could offer no plans on how to care for them should the children be reunified.

While Mother testified that she did have a home, Ms. Usrey testified that she had not been allowed inside since 2022. Mr. Becker, the program director of Clay County Sober Living, where Mother resided at the time of the hearing, also testified that Mother had a home, but he had not seen it. As such, the evidence does not preponderate against the trial court's findings.

The juvenile court made no findings for Factor (R), which concerns "[w]hether the physical environment of the parent's home is healthy and safe for the child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(Q). We agree that, as noted in the findings for Factor (Q), there is insufficient evidence to make that determination.

The court made no findings here as to factor (S), which concerns "[w]hether the parent has consistently provided more than token financial support for the child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(S). However, in its findings for factor (P), the court stated, "Other than one child support payment, [Mother] has not provided financial support or otherwise materially assisted the foster family in providing for the daily needs of the children throughout the children's time in state custody." Although Mother testified, "I'm paid up in full," the DCS caseworker testified that she had only made one payment, and the foster parents testified that she didn't pay child support. Notably, the trial court found Mother's testimony not credible but found DCS's witnesses to be credible. The record supports these findings.

The final factor, (T), considers "[w]hether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child." Tenn. Code Ann.

- 12 -

§ 36-1-113(i)(1)(T). The juvenile court found that Mother's emotional status would be detrimental to the Children, with the following findings of fact:

[Mother], as evidenced by her recent drug screen, continues to battle illegal substance abuse. She has not complied with the recommendations of the psychological evaluation to address her mental health needs. [Mother] has continued to engage in criminal activity throughout this case. Through [Mother's] actions and lifestyle choices, she has made herself unavailable and unable to provide Ava and Mitchell safety and stability.

The record fully supports these findings.

In addition to the statutory factors, the juvenile court also made the following findings:

[T]he Court finds that [Mother] has shown little or no genuine interest in the welfare of the children. [Mother] continues to make lifestyle choices that prevent her from being able to parent the children or to provide a home for the children. The Court also finds the children have been in foster care since the Court entered a protective custody order on April 7, 2022, placing the children in the custody of the Department of Children's Services. The Petition to Declare Children Dependent and Neglected was filed on April 8, 2022. [Mother] continues to have issues with substance abuse, criminal activity, housing instability, and difficulty complying with the Court or the Department.

20. The Court further finds the children are in a pre-adoptive home which wishes to become the children's forever family and that the children have a strong bond with the foster family.

Both Ms. Usrey and Mr. B[.] testified as to the strength of the bond between the foster family and the children. [Mother] also acknowledged and compl[i]mented how well the [foster parents] have cared for Ava and Mitchell. It is undisputed the children love their foster parents and that the foster parents love the children. Mr. B[.] made it clear he and his wife have long-term plans to provide for the children throughout their minority and beyond.

21. The children have been in legal limbo for two years due [to Mother's] failure to demonstrate an ability to appropriately parent. Ava and Mitchell need and deserve permanency.

We agree that these factors are relevant and, also, agree with the findings of the juvenile court concerning these factors.

Based on these and other findings, the juvenile court concluded that termination of Mother's parental rights was in the best interests of the Children.

After conducting a de novo review of the record, we agree that the combined weight of the relevant factors amounts to clear and convincing evidence that termination of Mother's parental rights is in best interest of the Children. *See In re Bentley E.*, 703 S.W.3d at 301; *see also In re Carrington H.*, 483 S.W.3d at 535. Thus, we affirm the finding that termination of Mother's parental rights is in the Children's best interests.

Because we have affirmed the juvenile court's determination that a ground for termination has been proven and that termination of Mother's parental rights is in the Children's best interests, we affirm the termination of Mother's parental rights to the Children, Ava and Mitchel.

## IN CONCLUSION

Based on the foregoing, we affirm the juvenile court in all respects. The costs on appeal are assessed against the appellant, McKayla C. M.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 14 -